No. 56,824

American States Insurance Company, A Foreign Corporation, *Plaintiff/Appellant,* v. Lavern E. Ehrlich, Arthur W. McCorkle, Margaret L. Sporleder, David A. McCorkle, Beverly J. Kindler, Esther E. Haynes and Josephine A. Melray, *Defendants/Appellees.*

(701 P.2d 676)

Opinion filed June 21, 1985.

*Thomas C. Boone,* of Law Offices of Thomas C. Boone, of Hays, argued the cause, and *Charles F. Steele,* of the same firm, was with him on the brief for appellant.

*Russell E. Grant,* of Mulvane, argued the cause, and *Stephen J. House,* of Mulvane, and *Daniel D. Metz* of Metz & Metz, of Lincoln, were with him on the brief for appellees.

The opinion of the court was delivered by

Prager, J.: This is an action brought by American States Insurance Company for a declaratory judgment and for rescission of an automobile liability insurance policy relying on a claimed fraudulent misrepresentation by the coinsureds, Lavern E. Ehrlich and Esther McCorkle, that they were husband and wife. The defendants are Lavern E. Ehrlich and the heirs of Esther McCorkle, now deceased.

The facts in the case are not disputed and essentially are as follows: On July 18, 1979, at approximately 6:20 p.m., defendant/appellee, Lavern Ehrlich, lost control of his motor vehicle while traveling at a high rate of speed and Esther Ehrlich a/k/a Esther McCorkle, a passenger in the vehicle, was fatally injured as a result of the accident. An action for damages against the defendant, Lavern Ehrlich, brought by the heirs of Esther

McCorkle, is the subject of a companion case in the District Court of Russell County, Kansas.

At the time of this accident, Lavern Ehrlich and Esther McCorkle were residents of Hoisington, Kansas. They were not married, although they were living together. Esther McCorkle was not divorced from her husband, Allan W. McCorkle, who is still living. The automobile driven by Lavern Ehrlich on the date of this fatal accident was owned by Lavern Ehrlich and was insured by plaintiff, American States Insurance Co., under an automobile liability policy.

The insurance policy, insofar as the same covered the automobile in question, a 1972 Ford Fairlane, became effective on June 11, 1979, and was in effect on the date of the accident, July 18, 1979. This policy was issued by virtue of two applications prepared by the Mawhiney Insurance Agency, Hoisington, Kansas. One is dated April 5, 1977. The second application form admitted into evidence is dated March 13, 1978, and is virtually identical in form and substance to the application dated April 5, 1977, except that different automobiles are shown thereon. Both applications indicated Esther Ehrlich was "married-living with spouse." Further, both applications indicated that Esther did not drive an automobile.

This action was tried to the court without a jury. At the trial, American States called as a witness Bill Mawhiney, an independent insurance agent representing numerous insurance companies including American States. He testified that the deceased, Esther McCorkle, told him that she was Esther Ehrlich and married to Lavern E. Ehrlich. He further testified that he did not know or talk to Lavern E. Ehrlich at the time the applications for automobile insurance were prepared. Mr. Mawhiney testified that, if each of the applications had stated that Esther and Lavern Ehrlich were not married and living together, then the decision to issue the policy would have been up to the underwriters at American States. Under cross-examination, Mawhiney testified that motor vehicle reports were the most important criteria for issuing the policy. The application in this case was submitted to the company based on the fact that Esther Ehrlich was not a driver. Mawhiney testified that it would have made no difference in the premium had the company known that Lavern and Esther were not married.

American States also called as a witness James L. Fieler, its branch claims manager. He testified that he first discovered Esther was not divorced from her first husband, and thus not married to Lavern Ehrlich, on January 1, 1981, when he received a letter from Esther McCorkle's heirs. Fieler then informed Mawhiney that Esther and Lavern Ehrlich were not married. At no place in his testimony did James Fieler testify that the company would not have issued the insurance policy or that the premium would have been different had the company known that Lavern E. Ehrlich and Esther McCorkle were not married.

The only other witness called at the trial was Lavern E. Ehrlich, who testified that he lived with Esther McCorkle for nine years and that they were not married. He further testified that he was not present when Esther McCorkle made the application for the insurance. He relied on Esther's taking care of his business, he trusted her, and he told Esther to secure the automobile liability insurance for him. He felt that she was a good and trustworthy woman.

Based upon this evidence the trial court held that the policy of insurance issued by American States was in force at the time the accident occurred. The court found that Lavern E. Ehrlich and Esther McCorkle were not husband and wife at the time the application for insurance was completed, nor at the time of the accident. The court held that the insurance policy should not be cancelled or rescinded as a result of any fraudulent misrepresentation made by either Lavern or Esther at the time the application for insurance was submitted. The court further held that, because Kansas law now has compulsory automobile liability insurance for licensees, the policy in this case provided coverage and could not be rescinded *ab initio*.

On this appeal, American States essentially presents two basic issues for determination: (1) Were the findings of the trial court supported by the evidence that American States had failed to show justification for cancellation of the insurance contract on the basis of a fraudulent misrepresentation; and (2) may an insurer rescind *ab initio* an automobile liability insurance policy under a compulsory insurance law for fraudulent misrepresentation? We have concluded that this case may be determined on the basis of the first issue and that it is not necessary in this case to decide the second issue presented.

Simply stated, we must determine whether the evidence supported the trial court's finding that there was no fraudulent misrepresentation sufficient to justify cancellation of the insurance policy. The rule is well established that where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Iola State Bank v. Bolan,* 235 Kan. 175, 187, 679 P.2d 720 (1984).

Upon appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. *Marcotte Realty & Auction, Inc. v. Schumacher,* 229 Kan. 252, 624 P.2d 420 (1981).

At the outset, we should consider what evidence is necessary to sustain an action to rescind a contract of insurance on the grounds of fraudulent misrepresentation. In *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980), it was held that actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage. Fraud is never presumed and must be shown by clear and convincing evidence. *Gonzalez v. Allstate Ins. Co.,* 217 Kan. 262, 535 P.2d 919 (1975). The existence of fraud is ordinarily a question of fact. An appellate court's review is limited to determining whether the trial court's finding is supported by competent evidence when that evidence is weighed in a manner most favorable to supporting the trial court's determination. *Miles v. Love,* 1 Kan. App. 2d 630, 573 P.2d 622, *rev. denied* 225 Kan. 845 (1977).

A fraudulent "misrepresentation" in the law of insurance is a statement by the insured as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and with an intent to deceive, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such fact in either case is material to the risk. 7 Am. Jur. 2d, Automobile Insurance § 45.

In this case, the claimed misrepresentation concerned the marital status of Lavern E. Ehrlich and Esther McCorkle. There is an excellent discussion in 7 Am. Jur. 2d, Automobile Insurance §§ 46 and 54, as to whether a misrepresentation of *marital status* is sufficiently material to permit an insurer to avoid its obligation under its contract. The test generally applied as to whether a misrepresentation is material, so as to permit the insurer to avoid its obligation under an insurance contract, is whether the knowledge of the truth would have reasonably influenced the insurer in accepting the risk or fixing the premium. It has also been said that whether a misrepresentation is material depends upon whether the insurer's risk of loss is increased thereby. Ordinarily, the materiality of a misrepresentation is a question for the trier of fact. The cases hold that where the insurer seeks to avoid obligations under a contract of automobile insurance, on the ground of misrepresentations made by the insured, the burden of proving materiality of the alleged misrepresentation is upon the insurer.

In *Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 397, 437 P.2d 798 (1968), the court held that the test of the materiality of a false statement on an application for health and accident insurance was whether the misrepresentation could reasonably be considered to be material in affecting the insurer's decisions as to whether or not to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon, citing 45 C.J.S., Insurance § 477, p. 204; and what is now 12A Appleman, Insurance Law and Practice, § 7294, p. 368 (1981).

In 7 Am. Jur. 2d, Automobile Insurance § 54, there is a discussion concerning the effect of a misrepresentation as to the marital status of the insured:

"When a party applies for an automobile liability insurance policy, the information which he is required to furnish the prospective insurer normally includes his name and marital status. In keeping with the general rules relating to misrepresentations, the insurer may avoid a policy if misinformation in these regards are provided, but only if the information may be considered to be material to the risk. Thus, a misstatement of the insured's name or marital status will permit the insurer to avoid a liability policy where it appears that no policy would have been issued—at least at the premium charged—had the actual facts been known to the insurer. But the mere use of an assumed name by an adult woman in her application for automobile liability insurance does not in itself constitute a misrepresentation which would affect the validity of the policy, nor

is it a breach of warranty. In this regard, an insurance company has been precluded from avoiding an insurance policy on the ground that an adult woman, in the application, used, as her last name, the name of a man with whom she was living at the time rather than the last name of her husband." *Erie Insurance v. Lane,* 246 Md. 55, 227 A.2d 231 (1967).

"Misrepresentation of marital status, in itself, also is insufficient to warrant the rescission of the insurance policy. Thus, an applicant who represents that he is married, when he in fact is divorced, does not thereby subject himself to the possible loss of his insurance on the basis of that misrepresentation. This is true even though the unmarried applicant, who indicates that he is married, may at the time be living with a person of the opposite sex. Similarly, it has been held that a female applicant makes no material misrepresentation where she truthfully indicates that she is married, but fails to indicate that she is separated from her husband, and is living with another man, even though she uses the last name of the man with whom she is living in making the application. In this regard, it has been held that such misrepresentations are not rendered material by the fact that the insurance company regards the morality of its policyholders to be of great importance to the company, or by the fact that the usual prohibition against one spouse suing another for tort would not apply where there is no legal marriage between the persons living together.

"However, where misrepresentations as to the identity of the insured are material, so as to have a bearing upon whether or not the insurance company will issue the insurance applied for, such misrepresentations may enable the insurer thereafter to avoid the contract.".

There is an excellent annotation on this subject at 27 A.L.R. 3d 849, where cases are cited which support the principles of law set forth above. In the annotation the general rule is stated to be as follows:

"If a particular statement as to the insured's name or marital status constitutes a representation, then its falsity will result in avoidance of the policy only if the matters dealt with were material to the risk insured against. The criterion most frequently employed for determining materiality is whether the insurer would have regarded the matter as substantially increasing the risk so as to bring about a rejection of the risk or the charging of an increased premium.

"A misstatement of the insured's name or marital status by and in itself will not avoid a liability policy." p. 851.

In the present case, the evidence presented by American States fails to show that the false statements made by Esther McCorkle as to her marital status with Lavern E. Ehrlich constituted a material misrepresentation in that they would have caused American States to refuse to issue the policy or to have charged an increased premium.

There is also another reason why the trial court was correct in refusing to grant cancellation of the insurance policy in this case.

That is because American States failed to show that it relied on the misrepresentation as to marital status. In *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.*, 211 Kan. 461, 507 P.2d 268 (1973), it is stated:

"One of the essential elements of actionable fraud is reliance thereon by the party to whom the misrepresentation was made, to his detriment." Syl. ¶ 3.

In this case, American States introduced no evidence whatsoever that the company in any way relied on Esther McCorkle's statements as to her marital status in deciding whether to issue the policy. Thus, another essential element necessary to prove actionable fraud was lacking—reliance thereon by the party to whom the misrepresentation was made.

Based upon the rationale set forth above, we hold that the trial court did not err in denying cancellation or rescission of the insurance contract in this case. The trial court correctly determined this issue on the basis that there was no evidence presented by the plaintiff, American States, at the trial that the company would not have accepted coverage had it known that Lavern E. Ehrlich and Esther McCorkle were not married or that the premium charged would have been different if they were living together and not married. Likewise, there is no evidence that the company in any way relied upon Esther McCorkle's statements in deciding whether or not to issue the policy. In view of our decision on this point, we deem it unnecessary to consider the second point raised by American States Insurance Company on this appeal.

The judgment of the district court is affirmed.

SCHROEDER, C.J., dissenting.