(798 P.2d 955)
No. 64,638

ROBERT H. DUNN AND CHERI DUNN, *Appellants*, v. SAFECO INSURANCE COMPANY OF AMERICA AND GENERAL INSURANCE COMPANY OF AMERICA, *Appellees*.

Opinion filed September 28, 1990.

*Michael R. Norlen* and *Howard E. Bodney*, of Overland Park, for the appellants.

*Paul Hasty, Jr.* and *Richard L. Marquez*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, for the appellees.

Before BRAZIL, P.J., RULON and LEWIS, JJ.

LEWIS, J.: This is an appeal by Robert H. Dunn and Cheri Dunn (the insureds) from the granting of summary judgment in

favor of the defendants/appellees, hereinafter referred to as the insurance company.

After careful review, we affirm.

The facts of this case indicate that the insureds approached the insurance company's agent seeking to purchase insurance covering a 1988 pickup. In order to obtain coverage, the insureds were required to complete an application, and this application was completed and signed by Cheri Dunn. In the application, Cheri Dunn represented that no driver of the vehicle had ever had his or her driver's license revoked or suspended. She also indicated that Robert Dunn would drive the vehicle approximately ten percent of the time. After the application was completed, it was turned over to the insurance agent along with a check for $124. In response to the receipt of the application and the check for the premium, the insurance agent issued a "binder" showing that coverage was in effect.

When the application reached the insurance company's main offices, a search of the state motor vehicle records was undertaken and compared to the facts of the application. This search revealed that the insureds had not been truthful in supplying the information on the application. The motor vehicle department records revealed that Robert Dunn's driver's license had been suspended several times and had been cancelled once since 1986.

At this point, it becomes important to note with particularity the dates on which subsequent events took place. On May 17, 1989, after it had discovered Robert's true driving record, the insurance company mailed a notice to the insureds. This notice was sent by certified mail to the address shown on the application and advised the insureds that no policy had ever been in effect as a result of their misrepresentations. The insurance company also enclosed in that notice a check for the "full return premium." The insureds testified they did not receive this notice, stating that they had moved from the address listed on their application. The insurance company again sent notices to the same address on May 24 and June 3, 1989. Neither notice was received by the insureds.

On May 19, 1989, the agent sent a letter to the insureds. This letter was sent by regular mail and was received by the insureds. In the letter, the agent advised the insureds that their policy

with the insurance company would become void in the near future. The agent offered to find other coverage for the insureds and advised that, if she had not heard from them by May 26, 1989, she would assume that coverage had been obtained elsewhere.

On May 28, 1989, the insureds wrecked their pickup in a one-vehicle accident, causing damage to that pickup in the amount of $9,600. There were no other vehicles or parties involved, and the insureds themselves are the sole "loss payees" under the policy.

We note that the insureds had received actual notice from their insurance agent that their policy was about to be cancelled several days prior to the accident involving their pickup. After their accident, the insureds demanded payment of their damages under the policy. The insurance company denied payment on the grounds that it had rescinded the policy *ab initio* due to the misrepresentations made by the insureds on the application. The insureds then filed this action, seeking to recover damages for breach of contract.

The insureds argue that the provisions of K.S.A. 1989 Supp. 40-3118(b) apply and that, despite their misrepresentations, the policy or "binder" could only be cancelled in strict accordance with that statute. That statute reads in relevant part:

"(b) Except as otherwise provided in K.S.A. 40-276, 40-276a and 40-277, and amendments thereto, and except for termination of insurance resulting from nonpayment of premium or upon the request for cancellation by the insured, *no motor vehicle liability insurance policy, or any renewal thereof*, shall be terminated by cancellation or failure to renew by the insurer until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured at the latest address filed with the insurer by or on behalf of the insured. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period." (Emphasis added.)

It is apparent that, if the above-quoted statute applies to this factual situation, rescission *ab initio* would not be permitted, and the insurance company would be required to have given the insureds at least 30 days' notice of termination.

The question presented for our resolution is one of first impression in this state. We must determine whether K.S.A. 1989 Supp. 40-3118(b) is controlling under these facts. To put the question

even more succinctly, we must determine whether the common-law right of rescission *ab initio* has been abrogated by our "no-fault insurance" law.

We first note that the insurance company argues that it is significant that it only issued a "binder" in the instant matter. It argues that the statute only applies to an insurance policy and, hence, has no application to the rescission or the cancellation of a binder. We do not agree with the insurance company's binder/policy distinction. This issue was considered in *Sentry Indemnity Co. v. Sharif*, 248 Ga. 395, 282 S.E.2d 907 (1981). In that case, the insurance company sought to avoid the binding precedent of a prior decision by arguing the difference between a binder and a policy. The Georgia court, in rejecting this argument, held:

"The Court of Appeals applied the *Pearce* holding in this case thereby allowing recovery on a binder the insurance company had sought to declare void ab initio on the basis that the insured had made material misrepresentations in applying for the insurance.

"Sentry, the insurer, argues that there are factual differences between this case and *Pearce* in that only a binder had been issued in the instant suit, whereas a policy, presumably after full investigation, had been issued in *Pearce*. . . .

"We agree with the Court of Appeals that the binder/policy distinction is of no consequence insofar as retrospective cancellation is concerned." 248 Ga. at 396.

We agree with the Georgia court and hold that the binder/policy distinction is of no importance in the resolution of this dispute.

There is no question but that, at common law, the right of rescission *ab initio* for fraud and misrepresentation was available to an insurance company. See, *e.g.*, *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 701 P.2d 676 (1985); *Klein v. Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730 (1931).

The issue is what impact, if any, K.S.A. 1989 Supp. 40-3118(b) has on the right of rescission. That statute was passed in 1974 as part of the Kansas Automobile Injury Reparations Act. That legislation, more commonly known as the "no-fault insurance law" was described in *Manzanares v. Bell*, 214 Kan. 589, 595, 522 P.2d 1291 (1974), as follows:

"The liability insurance prescribed by the no-fault legislation is mandatory, and the coverage afforded is extensive. Stated in summary fashion, Section

4 requires every motor vehicle owner to purchase liability insurance as specified by the Act. The operation of a motor vehicle on a highway of this state or property open to public use is prohibited, unless the prescribed liability insurance coverage is in force."

This type of legislation has spread throughout the United States and is in effect in nearly all of our states today. The courts have interpreted "no-fault" insurance legislation as expressing a public policy that one who suffers loss due to an automobile accident shall have a source and a means of recovery, hence, the mandatory requirement of liability insurance. *American Underwriters Group v. Williamson*, 496 N.E.2d 807 (Ind. App. 1986).

In pursuance of that public policy, the courts that have considered the issue have universally held that in the case of an innocent third party who has suffered injury from the insured's operation of an automobile, there is no right of rescission *ab initio* even for the most blatant fraud. In some, but not all, of those cases, the rationale for the decision was a statutory enactment similar to K.S.A. 1989 Supp. 40-3118(b). Those courts have held that rescission has been abrogated and that the only remedy for an insurance company is cancellation in strict accordance with the terms of the statute. *Teeter v. Allstate Insurance Company*, 9 App. Div. 2d 176, 192 N.Y.S.2d 610 (1959), *aff'd* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961).

Regardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance or financial responsibility law so as to escape liability to an innocent third party. See, *e.g.*, *American Underwriters v. Williamson*, 496 N.E.2d 807; *Sentry Indemnity Co. v. Sharif*, 248 Ga. 395; *Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388, 343 N.E.2d 679 (1976); *Fisher v. New Jersey Auto. Full Ins.*, 224 N.J. Super 552, 540 A.2d 1344 (1988); 7 Am. Jur. 2d, Auto Insurance § 37; Annot., 72 A.L.R.3d 804; Annot., 83 A.L.R.2d 1104.

California has adopted a unique rule. In *Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659, 79 Cal. Rptr. 106, 456 P.2d 674 (1969), the California court held that, in cases where it was shown that an insurance company had conducted a reasonable

investigation of insurability within a reasonable time from the issuance of the policy, it retained the right to rescind; otherwise, it did not.

The cases cited above have all dealt with the question of rescission of a compulsory liability policy under facts wherein the injured party was an innocent victim of an insured's negligence. The instant case is not controlled by those decisions. Here, we have a dispute between an insurer and its insureds. There is no injured third party, and the insurance company seeks only to avoid paying on a collision claim made by insureds who are guilty of having made material misrepresentations. We note that 40-3118(b) deals only with the cancellation of *automobile liability policies.* In this case, the insurance company seeks to rescind to avoid a claim made under the collision feature of its policy, which is not mandated by our no-fault law.

The absence of an innocent third party is a significant distinction from the cases cited above and most courts which have considered the question from this standpoint have upheld the right of rescission. In *United Security v. Ins. Comm'r,* 133 Mich. App. 38, 348 N.W.2d 34 (1984), the insured had obtained an insurance policy by misrepresenting facts on his application. He was injured in an accident after the policy was issued and then filed suit claiming PIP benefits under that policy. The insurance ·company defended, arguing that it had the right to rescind *ab initio.* The commissioner of insurance argued that a statute similar to K.S.A. 1989 Supp. 40-3118(b) controlled the case and that it was the exclusive method of cancelling an insurance policy. The Michigan court ruled in favor of the insurance company, holding that rescission was a remedy distinct from cancellation. The court explained its decision as follows:

"We emphasize that the person making the claim under the insurance policy here is the insured who made the intentional material misrepresentations; this is not a case in which the claimants are innocent third parties. Panels of this Court have held that the liability of an insurer with respect to insurance becomes absolute whenever injury covered by the policy occurs and that no statement made by or on behalf of the insured or violation of the policy may be used to avoid liability under such circumstances. *Detroit Automobile Inter-Ins. Exchange v. Ayvazian,* 62 Mich. App. 94, 99-100, 233 N.W.2d 200 (1975); *Frankenmuth Mutual Ins. Co. v. Latham,* 103 Mich. App. 66, 68, 302 N.W.2d 329 (1981). See also the dicta in *State Farm*

Mutual Automobile Ins. Co. v. Kurylowicz, supra, 67 Mich. App. 574, 242 N.W.2d 530. However, in those cases the insurance companies were attempting to use acts or misrepresentations by the insured to rescind a policy *ab initio* and thus avoid liability to other claimants.

"Michigan's comprehensive scheme of compulsory no-fault automobile insurance arguably requires as a matter of policy that the insurer rather than innocent third parties bear the risk of intentional material misrepresentations by the insured. However, we see no reason in law or policy for the burden of such a risk to be placed on the insurer in preference to the insured who made the intentional material misrepresentations. . . .

". . . Here, however, no question of reliance on the binder by the public is presented, because the claim for personal protection benefits is made by an insured who made intentional material misrepresentations, rather than an innocent third party." 133 Mich. App. at 43-44.

The point made by the Michigan court is that, in those cases where an innocent third party is involved, there is a public policy which requires a holding that the insurance company cannot avoid liability by rescission. However, in a case where there is no innocent third party involved and the dispute is only between the insurer and its insured, no compelling public policy reasons exist for holding that the insurance company has lost the right of rescission.

We adopt the reasoning of the Michigan court and hold that, in a case involving only the insurance company and its insured, the insurance company has the right to rescind the policy *ab initio* as to the claims of an insured for collision benefits under a policy obtained through misrepresentation.

To hold otherwise would permit an insured to benefit from his or her fraudulent misrepresentations and would leave the insurance company without a remedy to protect itself from such fraud. There is simply no pressing public policy reason for such a holding.

Further, we hold that, under the circumstances presented, the courts may sever the noncompulsory provisions from the insurance policy and permit rescission only as to those provisions not required by our no-fault law. K.S.A. 1989 Supp. 40-3118(b) applies only to cancellation of automobile *liability* insurance policies and, thus, has no application to the rescission or cancellation of the "collision" or nonliability features of a policy which apply only to the insured.

Our decision is limited to those cases where the compulsory features of our no-fault law are not involved and where the controversy is between the insurer and its insured only and no third parties are involved. The question of whether rescission would be permitted in a case involving liability to an innocent third party is not before this court and its resolution is not necessary to our decision. As a result, we do not consider that issue, and our comments on that factual scenario should be considered as dicta only.

The insureds argue that our decision to allow the insurance company to rescind visits a "cruel injustice" upon them. We do not agree. Any hardships occasioned by our decision are the result of the failure of the insureds to honestly answer all questions in the application for insurance.

We further hold that, under the facts of this case, the insureds were adequately notified of the decision to rescind. The insurance company attempted to notify the insureds by sending the notice by registered mail to their last known address. We hold that such a mailing imparts sufficient notice even though the insureds may not have received the mailing. *Feldt v. Union Ins. Co.*, 240 Kan. 108, 726 P.2d 1341 (1986). Further, the insureds admit receiving notice from their insurance agent prior to the damage to their pickup. Based on the entire record, we conclude the insureds were adequately notified of the decision to rescind.

Affirmed.