No. 65,476

CONTINENTAL WESTERN INSURANCE COMPANY, *Appellant,* v. MARK D. CLAY, MICHAEL D. JOHNSON, and MID-CENTURY INSURANCE COMPANY, *Appellees.*

(811 P.2d 1202)

Opinion filed May 24, 1991.

*Donald W. Vasos,* of Vasos, Kugler & Dickerson, of Kansas City, argued the cause and was on the briefs for appellant.

*Monti L. Belot,* of Hall, Levy, Lively, DeVore, Belot & Bell, of Coffeyville, argued the cause and was on the briefs for appellee Mid-Century Insurance Company.

The opinion of the court was delivered by

MCFARLAND, J.: This is a declaratory judgment action wherein Continental Western Insurance Company (Continental) seeks to rescind, *ab initio*, a temporary automobile liability insurance binder issued to Mark Clay. The district court held that: (1) Clay made fraudulent misrepresentations in his application for coverage; (2) Continental had the right of rescission *ab initio* as to

Clay's claim; and (3) Continental's right of rescission does not extend to claims made by Michael D. Johnson, a passenger in the Clay vehicle who was injured in the accident giving rise to this litigation. Continental appeals from the district court's judgment denying rescission as to Johnson's claim.

The facts are not in dispute. On September 1, 1988, Clay applied to Kent O. Carpenter, a Continental agent, for a binder and policy of automobile liability insurance on his 1972 AMC Gremlin. The insurance application form was completed by Carpenter in response to questions asked of Clay. Clay asserted he: (1) had a valid Kansas driver's license; (2) had been involved in no accidents within the last three years; and (3) had not received any tickets in the same period of time. Clay signed the application under a printed statement which provided:

"I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that all of these statements are offered as an inducement to the Company to issue the policy for which I am applying."

In fact, (1) Clay's driver's license had been suspended since June 21, 1987; (2) Clay had been in an accident on December 15, 1986; and (3) Clay had been ticketed for two moving violations within the three-year period.

Carpenter could have declined to issue the binder and just forwarded the application to Continental. However, based upon the information supplied by Clay, he saw no reason to delay and issued the binder. Had Clay answered the questions previously mentioned truthfully, no binder would have been issued. In fact, Clay would not have been accepted for insurance under Continental's guidelines.

Clay was driving the Gremlin on September 3, 1988, when he was involved in an accident in Wilson County. Michael D. Johnson was a passenger in the vehicle at the time and was injured. Johnson has uninsured motorist coverage with Mid-Century Insurance Company.

On September 7, 1988, Continental ordered a copy of Clay's driving record. The true information on Clay's driving record was received on September 9 or the next workday. On September 15, 1988, Continental mailed a notice of cancellation to Clay (and Carpenter), effective October 18, 1988. Continental then filed

this action to rescind the binder. Mid-Century was permitted to intervene in the action because of its uninsured motorist coverage on Johnson. At the time of the judgment herein, Johnson had incurred medical expenses of $5,733.24 and had received $4,500 in personal injury protection benefits from Mid-Century.

There is really no issue before us as to the propriety of the district court's determinations (1) that Clay's misrepresentation was material and fraudulent, and (2) that Continental's common-law right of rescission as to Clay had not been abrogated by enactment of our "no-fault" insurance law. However, it is impossible to discuss the issue of whether the rescission applies to Johnson, an innocent third party, without some discussion of these matters.

Although not particularly helpful herein, *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 701 P.2d 676 (1985), deserves some mention as it appears to be the only case we have which touches upon the issue before us. In *Ehrlich*, the coinsureds misrepresented their marital status in the application for automobile insurance. One of the insureds was a passenger in a vehicle operated by the other insured at the time of the accident and died as a result thereof. The heirs of the deceased brought an action against the insured driver. Coverage was litigated in a declaratory judgment action. In our opinion, we stated:

"Based upon this evidence the trial court held that the policy of insurance issued by American States was in force at the time the accident occurred. The court found that Lavern E. Ehrlich and Esther McCorkle were not husband and wife at the time the application for insurance was completed, nor at the time of the accident. The court held that the insurance policy should not be cancelled or rescinded as a result of any fraudulent misrepresentation made by either Lavern or Esther at the time the application for insurance was submitted. The court further held that, because Kansas law now has compulsory automobile liability insurance for licensees, the policy in this case provided coverage and could not be rescinded *ab initio*.

"On this appeal, American States essentially presents two basic issues for determination: (1) Were the findings of the trial court supported by the evidence that American States had failed to show justification for cancellation of the insurance contract on the basis of a fraudulent misrepresentation; and (2) may an insurer rescind *ab initio* an automobile liability insurance policy under a compulsory insurance law for fraudulent misrepresentation? We have concluded that this case may be determined on the basis of the first

issue and that it is not necessary in this case to decide the second issue presented." 237 Kan. at 451.

We then concluded that the false statements as to marital status were not material misrepresentations and, accordingly, could not serve as a legal basis for cancellation or rescission.

*Dunn v. Safeco Ins. Co.*, 14 Kan. App. 2d 732, 798 P.2d 955 (1990), provides a good discussion pertinent to this case. Cheri Dunn completed an automobile insurance application on behalf of herself and her husband Robert. A binder was issued by Safeco. In the application, Cheri stated Robert would be driving the vehicle ten percent of the time and that no listed driver had ever had his or her license suspended or revoked. Safeco subsequently discovered Robert's license had been suspended several times and had been cancelled once. Letters were sent to the Dunns by certified mail advising that, as a result of the misrepresentation, no policy was in effect and returning the premium. Due to the Dunns having moved, the letters were not received. On May 19, 1989, the agent sent a letter to the insureds advising that their policy would become void in the near future. On May 28, 1989, the insured vehicle was wrecked and the Dunns filed a claim for collision coverage. No third parties were involved. Safeco denied coverage. The Dunns brought an action to recover under the policy. The district court entered summary judgment in favor of Safeco.

In affirming the district court, the Court of Appeals stated:

"The insureds argue that the provisions of K.S.A. 1989 Supp. 40-3118(b) apply and that, despite their misrepresentations, the policy or 'binder' could only be cancelled in strict accordance with that statute. That statute reads in relevant part:

" '(b) Except as otherwise provided in K.S.A. 40-276, 40-276a and 40-277, and amendments thereto, and except for termination of insurance resulting from nonpayment of premium or upon the request for cancellation by the insured, *no motor vehicle liability insurance policy, or any renewal thereof*, shall be terminated by cancellation or failure to renew by the insurer until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured at the latest address filed with the insurer by or on behalf of the insured. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period.' (Emphasis added.)

"It is apparent that, if the above-quoted statute applies to this factual situation, rescission *ab initio* would not be permitted, and the insurance

company would be required to have given the insureds at least 30 days' notice of termination.

"The question presented for our resolution is one of first impression in this state. We must determine whether K.S.A. 1989 Supp. 40-3118(b) is controlling under these facts. To put the question even more succinctly, we must determine whether the common-law right of rescission *ab initio* has been abrogated by our 'no-fault insurance' law.

. . . .

"There is no question but that, at common law, the right of rescission *ab initio* for fraud and misrepresentation was available to an insurance company. See, *e.g., American States Ins. Co. v. Ehrlich,* 237 Kan. 449, 701 P.2d 676 (1985); *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730 (1931).

"The issue is what impact, if any, K.S.A. 1989 Supp. 40-3118(b) has on the right of rescission. That statute was passed in 1974 as part of the Kansas Automobile Injury Reparations Act. That legislation, more commonly known as the 'no-fault insurance law' was described in *Manzanares v. Bell,* 214 Kan. 589, 595, 522 P.2d 1291 (1974), as follows:

" 'The liability insurance prescribed by the no-fault legislation is mandatory, and the coverage afforded is extensive. Stated in summary fashion, Section 4 requires every motor vehicle owner to purchase liability insurance as specified by the Act. The operation of a motor vehicle on a highway of this state or property open to public use is prohibited, unless the prescribed liability insurance coverage is in force.'

"This type of legislation has spread throughout the United States and is in effect in nearly all of our states today. The courts have interpreted 'no-fault' insurance legislation as expressing a public policy that one who suffers loss due to an automobile accident shall have a source and a means of recovery, hence, the mandatory requirement of liability insurance. *American Underwriters Group v. Williamson,* 496 N.E.2d 807 (Ind. App. 1986).

"In pursuance of that public policy, the courts that have considered the issue have universally held that in the case of an innocent third party who has suffered injury from the insured's operation of an automobile, there is no right of rescission *ab initio* even for the most blatant fraud. In some, but not all, of those cases, the rationale for the decision was a statutory enactment similar to K.S.A. 1989 Supp. 40-3118(b). Those courts have held that rescission has been abrogated and that the only remedy for an insurance company is cancellation in strict accordance with the terms of the statute. *Teeter v. Allstate Insurance Company,* 9 App. Div. 2d 176, 192 N.Y.S.2d 610 (1959), *aff'd* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961).

"Regardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance or financial responsibility law so as to escape liability to an innocent third party. See, *e.g., American Underwriters v. Williamson,* 496 N.E.2d 807; *Sentry Indemnity Co. v. Sharif,*

248 Ga. 395; *Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388, 343 N.E.2d 679 (1976); *Fisher v. New Jersey Auto. Full Ins.*, 224 N.J. Super. 552, 540 A.2d 1344 (1988); 7 Am. Jur. 2d, Auto Insurance § 37; Annot., 72 A.L.R.3d 804; Annot., 83 A.L.R.2d 1104.

. . . .

"The cases cited above have all dealt with the question of rescission of a compulsory liability policy under facts wherein the injured party was an innocent victim of an insured's negligence. The instant case is not controlled by those decisions. Here, we have a dispute between an insurer and its insureds. There is no injured third party, and the insurance company seeks only to avoid paying on a collision claim made by insureds who are guilty of having made material misrepresentations. We note that 40-3118(b) deals only with the cancellation of *automobile liability policies*. In this case, the insurance company seeks to rescind to avoid a claim made under the collision feature of its policy, which is not mandated by our no-fault law.

"The absence of an innocent third party is a significant distinction from the cases cited above and most courts which have considered the question from this standpoint have upheld the right of rescission. In *United Security v. Ins. Comm'r*, 133 Mich. App. 38, 348 N.W.2d 34 (1984), the insured had obtained an insurance policy by misrepresenting facts on his application. He was injured in an accident after the policy was issued and then filed suit claiming PIP benefits under that policy. The insurance company defended, arguing that it had the right to rescind *ab initio*. The commissioner of insurance argued that a statute similar to K.S.A. 1989 Supp. 40-3118(b) controlled the case and that it was the exclusive method of cancelling an insurance policy. The Michigan court ruled in favor of the insurance company, holding that rescission was a remedy distinct from cancellation. The court explained its decision as follows:

" 'We emphasize that the person making the claim under the insurance policy here is the insured who made the intentional material misrepresentations; this is not a case in which the claimants are innocent third parties. Panels of this Court have held that the liability of an insurer with respect to insurance becomes absolute whenever injury covered by the policy occurs and that no statement made by or on behalf of the insured or violation of the policy may be used to avoid liability under such circumstances. *Detroit Automobile Inter-Ins. Exchange v. Ayvazian*, 62 Mich. App. 94, 99-100, 233 N.W.2d 200 (1975); *Frankenmuth Mutual Ins. Co. v. Latham*, 103 Mich. App. 66, 68, 302 N.W.2d 329 (1981). See also the dicta in *State Farm Mutual Automobile Ins. Co. v. Kurylowicz, supra*, 67 Mich. App. 574, 242 N.W.2d 530. However, in those cases the insurance companies were attempting to use acts or misrepresentations by the insured to rescind a policy *ab initio* and thus avoid liability to other claimants.

" 'Michigan's comprehensive scheme of compulsory no-fault automobile insurance arguably requires as a matter of policy that the insurer rather than innocent third parties bear the risk of intentional material misrepresentations by the insured. However, we see no reason in law or policy for

the burden of such a risk to be placed on the insurer in preference to the insured who made the intentional material misrepresentations. . . .

" '. . . Here, however, no question of reliance on the binder by the public is presented, because the claim for personal protection benefits is made by an insured who made intentional material misrepresentations, rather than an innocent third party.' 133 Mich. App. at 43-44.

"The point made by the Michigan court is that, in those cases where an innocent third party is involved, there is a public policy which requires a holding that the insurance company cannot avoid liability by rescission. However, in a case where there is no innocent third party involved and the dispute is only between the insurer and its insured, no compelling public policy reasons exist for holding that the insurance company has lost the right of rescission.

. . . .

"Our decision is limited to those cases where the compulsory features of our no-fault law are not involved and where the controversy is between the insurer and its insured only and no third parties are involved. The question of whether rescission would be permitted in a case involving liability to an innocent third party is not before this court and its resolution is not necessary to our decision. As a result, we do not consider that issue, and our comments on that factual scenario should be considered as dicta only." 14 Kan. App. 2d at 734-39.

As noted by the Court of Appeals in *Dunn*, its comments relative to rescission where innocent third parties are involved are dicta. However, there, as here, both situations have to be discussed in order to show why the public policy is better served by treating claims of the fraudulently insured differently from those of innocent third parties.

The position taken by the Court of Appeals in *Dunn* is consistent with 7 Am. Jur. 2d, Automobile Insurance § 37, which states:

"Since the purpose of a compulsory insurance statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage, and since, once a certificate of insurance has been issued and filed with the commissioner of motor vehicles, the contract of insurance ceases to be a private contract between the parties and a supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions, it is impossible to reconcile the existence of a right to rescind the insurance contract ab initio for fraud with the general scheme of the compulsory insurance law.

"*Thus it has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial*

*responsibility insurance law so as to escape liability to a third party."* (Emphasis supplied.)

To the same effect see Annot., 83 A.L.R.2d 1104 § 2, and cases cited therein.

We conclude that the rationale expressed by the Court of Appeals in the portions of *Dunn* quoted herein is sound. We hold:

1. K.S.A. 1990 Supp. 40-3118(b) is a part of the Kansas Automobile Injury Reparations Act and applies only to the cancellation of automobile *liability* insurance policies and other features of such liability policies mandated by the Kansas No-Fault Insurance Law.

2. An insurance company has the right, upon proper proof, to rescind a policy or binder *ab initio* for fraud or misrepresentation where the controversy involves *only* the insurer and its insured over nonliability, noncompulsory features of the insurance policy.

3. Where claims have been made by both the insured acquiring the insurance through fraudulent misrepresentation and an injured innocent third party, severance of the nonliability, noncompulsory features of the policy is proper, thereby permitting rescission *ab initio* as to the claim of the insured involving provisions not mandated by the Kansas Automobile Injury Reparations Act.

As an additional ground for permitting complete rescission *ab initio* so as to cut off Johnson's claim, Continental points out Johnson has uninsured motorist coverage so he will not be hurt by rescission of the Clay policy. Whatever insurance the injured third party may have in his own right in this particular case has no bearing on our determination herein. We have construed K.S.A. 1990 Supp. 40-3118(b) as a statutory abrogation of an insurance company's common-law right of rescission *ab initio* as to features of automobile liability policies mandated by the Kansas No-Fault Insurance Law. Johnson's claim is under such mandated liability provision and, therefore, rescission *ab initio* is not available to Continental. Further, Clay is an insured motorist under our holding as to Johnson's claim, and, hence, not within the purview of Johnson's uninsured motorist coverage.

The judgment of the district court is affirmed.