No. 66,471

VYRNON E. SLABY and MARY C. SLABY, as Guardians and Conservators for DEREK E. SLABY, *Appellees*, v. JASON A. COX and CAROLYN COX, *Appellees*, and ALLIANCE INSURANCE CO., *Appellant/Garnishee*.

(827 P.2d 18)

Opinion filed February 28, 1992.

*Timothy J. Finnerty*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellant/garnishee.

*David S. Wooding*, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Terry J. Torline*, of the same firm, was with him on the briefs for appellees Vyrnon E. Slaby and Mary C. Slaby.

*John J. Jurcyk, Jr.*, and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

MCFARLAND, J.: This is an insurance coverage dispute. The district court held that coverage existed and entered partial summary judgment in favor of the injured person's conservators and natural guardians and against the garnished insurance company. Said judgment was certified pursuant to K.S.A. 1991 Supp. 60-254(b), and the insurance company appeals therefrom.

The facts may be summarized as follows. On or about March 20, 1989, Joseph Cox contacted Richard Angleton relative to the purchase of automobile insurance for three vehicles driven by members of the Cox household. Angleton was an employee of Crown Insurance Agency. He was also an independent agent of Alliance Insurance Co., empowered to issue binders for such company. At the request of Cox, Angleton obtained quotes from several companies for insurance coverage for the Cox vehicles.

On March 22, 1989, at approximately 12:10 p.m., Cox's 18-year-old son, Jason, was operating one of the Cox vehicles. At this time, Derek Slaby was riding on the hood of the vehicle. Slaby slid from the hood and was seriously injured. Joseph Cox went to the scene of the accident and learned Slaby had been injured. *Subsequently*, at approximately 3:00 p.m. the same day, Cox met with Angleton and completed an Alliance insurance application. One of the questions asked about previous automobile accidents. The answer to the question made no mention of the Slaby accident, nor did Cox say anything to Angleton about the Slaby accident. For purposes of summary judgment, it was stipulated that Cox fraudulently answered the question relative to previous accidents. Angleton signed the application making it a binder, and Cox paid the premium during the meeting. Had the question been answered truthfully, the binder would not have been executed. Subsequently, Alliance processed the application and issued the policy *effective 12:01 a.m., March 22, 1989*, with policy limits of $100,000 for bodily injury.

On June 6, 1989, Alliance wrote Joseph Cox stating that it considered the policy void *ab initio* by virtue of Cox's failure to reveal the accident on the application. The Slabys brought an action against Jason and Carolyn Cox, seeking recovery for Derek's injuries (case No. 89-C-3100). On June 13, 1990, Alliance filed a declaratory judgment action against the Coxes and the Slabys, seeking a judicial determination that the policy was void *ab initio* or, alternatively, that the policy should be reformed to exclude the Slaby accident (case No. 90 C 1979).

On June 22, 1990, a consent judgment was entered against Jason Cox in the amount of $565,553.25. On August 17, 1990, the Slabys initiated a garnishment proceeding against Alliance.

The garnishment proceeding and the declaratory judgment action were consolidated for summary judgment purposes only.

On December 20, 1990, Alliance paid $131,105.43 into court. This represents the $100,000 policy limits plus interest on the entire judgment.

The district court held that the policy could not be rescinded (declared void *ab initio*) by Alliance nor would reformation be permitted. The basis for the ruling was K.S.A. 40-3118 *et seq.* and *Dunn v. Safeco Ins. Co.*, 14 Kan. App. 2d 732, 798 P.2d 955 (1990).

Later, Alliance filed a motion to amend the judgment to limit the coverage to $25,000, the statutory minimum. This motion was denied. Alliance appeals from all adverse rulings of the district court.

For its issues on appeal, Alliance contends the district court erred in:

1. refusing to allow rescission of the policy on the basis it was void *ab initio* or, alternatively, to reform the contract to exclude coverage for the Slaby accident; and

2. refusing to reduce the coverage to the statutory minimum of $25,000 (K.S.A. 40-3107[e]).

K.S.A. 1991 Supp. 40-3118(b) provides in pertinent part:

"Except as otherwise provided in K.S.A. 40-276, 40-276a and 40-277, and amendments thereto, and except for termination of insurance resulting from nonpayment of premium or upon the request for cancellation by the insured, no motor vehicle liability insurance policy, or any renewal thereof, shall be terminated by cancellation or failure to renew by the insurer until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured at the latest address filed with the insurer by or on behalf of the insured. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period."

At common law the right of rescission *ab initio* for fraud and misrepresentation was available to an insurance company. See *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 701 P.2d 676 (1985); *Klein v. Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730 (1931); *Dunn v. Safeco Ins. Co.*, 14 Kan. App. 2d 732.

Kansas appellate courts have twice considered the impact of K.S.A. 1991 Supp. 40-3118(b) on an insurance company's com-

mon-law right of rescission for fraud in the application for insurance. These cases are *Continental Western Ins. Co. v. Clay*, 248 Kan. 889, 811 P.2d 1202 (1991), and *Dunn v. Safeco Ins. Co.*, 14 Kan. App. 2d 732.

In *Dunn*, the court held:

"The issue is what impact, if any, K.S.A. 1989 Supp. 40-3118(b) has on the right of rescission. That statute was passed in 1974 as part of the Kansas Automobile Injury Reparations Act. That legislation, more commonly known as the 'no-fault insurance law' was described in *Manzanares v. Bell*, 214 Kan. 589, 595, 522 P.2d 1291 (1974), as follows:

'The liability insurance prescribed by the no-fault legislation is mandatory, and the coverage afforded is extensive. Stated in summary fashion, Section 4 requires every motor vehicle owner to purchase liability insurance as specified by the Act. The operation of a motor vehicle on a highway of this state or property open to public use is prohibited, unless the prescribed liability insurance coverage is in force.'

"This type of legislation has spread throughout the United States and, is in effect in nearly all of our states today. The courts have interpreted 'no-fault' insurance legislation as expressing a public policy that one who suffers loss due to an automobile accident shall have a source and a means of recovery, hence, the mandatory requirement of liability insurance. *American Underwriters Group v. Williamson*, 496 N.E.2d 807 (Ind. App. 1986).

"In pursuance of that public policy, the courts that have considered the issue have universally held that in the case of an innocent third party who has suffered injury from the insured's operation of an automobile, there is no right of rescission *ab initio* even for the most blatant fraud. In some, but not all, of those cases, the rationale for the decision was a statutory enactment similar to K.S.A. 1989 Supp. 40-3118(b). Those courts have held that rescission has been abrogated and that the only remedy for an insurance company is cancellation in strict accordance with the terms of the statute. *Teeter v. Allstate Insurance Company*, 9 App. Div. 2d 176, 192 N.Y.S.2d 610 (1959), *aff'd* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961).

"Regardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance or financial responsibility law so as to escape liability to an innocent third party. See, *e.g.*, *American Underwriters v. Williamson*, 496 N.E.2d 807; *Sentry Indemnity Co. v. Sharif*, 248 Ga. 395; *Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388, 343 N.E.2d 679 (1976); *Fisher v. New Jersey Auto. Full Ins.*, 224 N.J. Super. 552, 540 A.2d 1344 (1988); 7 Am. Jur. 2d, Auto Insurance § 37; Annot., 72 A.L.R.3d 804; Annot., 83 A.L.R.2d 1104." 14 Kan. App. 2d at 735-36.

In *Dunn*, however, the claim at issue was one filed by the insureds themselves under the collision provisions of the policy. The *Dunn* court held:

"The cases cited above have all dealt with the question of rescission of a compulsory liability policy under facts wherein the injured party was an innocent victim of an insured's negligence. The instant case is not controlled by those decisions. Here, we have a dispute between an insurer and its insureds. There is no injured third party, and the insurance company seeks only to avoid paying on a collision claim made by insureds who are guilty of having made material misrepresentations. We note that 40-3118(b) deals only with the cancellation of *automobile liability policies*. In this case, the insurance company seeks to rescind to avoid a claim made under the collision feature of its policy, which is not mandated by our no-fault law.

"The absence of an innocent third party is a significant distinction from the cases cited above and most courts which have considered the question from this standpoint have upheld the right of rescission. In *United Security v. Ins. Comm'r*, 133 Mich. App. 38, 348 N.W.2d 34 (1984), the insured had obtained an insurance policy by misrepresenting facts on his application. He was injured in an accident after the policy was issued and then filed suit claiming PIP benefits under that policy. The insurance company defended, arguing that it had the right to rescind *ab initio*. The commissioner of insurance argued that a statute similar to K.S.A. 1989 Supp. 40-3118(b) controlled the case and that it was the exclusive method of cancelling an insurance policy. The Michigan court ruled in favor of the insurance company, holding that rescission was a remedy distinct from cancellation. The court explained its decision as follows:

'We emphasize that the person making the claim under the insurance policy here is the insured who made the intentional material misrepresentations; this is not a case in which the claimants are innocent third parties. Panels of this Court have held that the liability of an insurer with respect to insurance becomes absolute whenever injury covered by the policy occurs and that no statement made by or on behalf of the insured or violation of the policy may be used to avoid liability under such circumstances. *Detroit Automobile Inter-Ins. Exchange v. Ayvazian*, 62 Mich. App. 94, 99-100, 233 N.W.2d 200 (1975); *Frankenmuth Mutual Ins. Co. v. Latham*, 103 Mich. App. 66, 68, 302 N.W.2d 329 (1981). See also the dicta in *State Farm Mutual Automobile Ins. Co. v. Kurylowicz, supra*, 67 Mich. App. 574, 242 N.W.2d 530. However, in those cases the insurance companies were attempting to use acts or misrepresentations by the insured to rescind a policy *ab initio* and thus avoid liability to other claimants.

'Michigan's comprehensive scheme of compulsory no-fault automobile insurance arguably requires as a matter of policy that the insurer rather than innocent third parties bear the risk of intentional material misrepresentations by the insured. However, we see no reason in law or policy for the burden of such a risk to be placed on the insurer in preference to the insured who made the intentionally material misrepresentations. . . .

'. . . Here, however, no question of reliance on the binder by the public is presented, because the claim for personal protection benefits is made by

an insured who made intentional material misrepresentations, rather than an innocent third party.' 133 Mich. App. at 43-44.

"The point made by the Michigan court is that, in those cases where an innocent third party is involved, there is a public policy which requires a holding that the insurance company cannot avoid liability by rescission. However, in a case where there is no innocent third party involved and the dispute is only between the insurer and its insured, no compelling public policy reasons exist for holding that the insurance company has lost the right of rescission.

. . . .

"Our decision is limited to those cases where the compulsory features of our no-fault law are not involved and where the controversy is between the insurer and its insured only and no third parties are involved. The question of whether rescission would be permitted in a case involving liability to an innocent third party is not before this court and its resolution is not necessary to our decision. As a result, we do not consider that issue, and our comments on that factual scenario should be considered as dicta only." 14 Kan. App. 2d at 737-39.

In *Continental Western*, 248 Kan. 889, we had two claims being made under the policy for which rescission was being sought: (1) by the insured and (2) by a passenger injured in the insured's vehicle. After quoting the above portions of *Dunn*, we stated:

"As noted by the Court of Appeals in *Dunn*, its comments relative to rescission where innocent third parties are involved are dicta. However, there, as here, both situations have to be discussed in order to show why the public policy is better served by treating claims of the fraudulently insured differently from those of innocent third parties.

"The position taken by the Court of Appeals in *Dunn* is consistent with 7 Am. Jur. 2d, Automobile Insurance § 37, which states:

'Since the purpose of a compulsory insurance statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage, and since, once a certificate of insurance has been issued and filed with the commissioner of motor vehicles, the contract of insurance ceases to be a private contract between the parties and a supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions, it is impossible to reconcile the existence of a right to rescind the insurance contract ab initio for fraud with the general scheme of the compulsory insurance law.

'*Thus it has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party.*' (Emphasis supplied.)

"To the same effect see Annot., 83 A.L.R.2d 1104 § 2, and cases cited therein.

"We conclude that the rationale expressed by the Court of Appeals in the portions of *Dunn* quoted herein is sound. We hold:

"1. K.S.A. 1990 Supp. 40-3118(b) is a part of the Kansas Automobile Injury Reparations Act and applies only to the cancellation of automobile *liability* insurance policies and other features of such liability policies mandated by the Kansas No-Fault Insurance Law.

"2. An insurance company has the right, upon proper proof, to rescind a policy or binder *ab initio* for fraud or misrepresentation where the controversy involves *only* the insurer and its insured over nonliability, noncompulsory features of the insurance policy.

"3. Where claims have been made by both the insured acquiring the insurance through fraudulent misrepresentation and an injured innocent third party, severance of the nonliability, noncompulsory features of the policy is proper, thereby permitting rescission *ab initio* as to the claim of the insured involving provisions not mandated by the Kansas Automobile Injury Reparations Act." 248 Kan. at 895-96.

Both *Dunn* and *Continental Western* involved factual situations where fraudulent statements were made by the insured in the application for insurance, a binder or policy was issued, and then the incident giving rise to the claim or claims occurred. In the case before us, at the time the accident occurred in which Derek Slaby was injured there was no policy or insurance in effect. With knowledge that the accident had occurred and that Slaby had been injured, Joseph Cox filled out the application for insurance, stating there had been no accidents, and obtained an insurance binder. By virtue of insurance practice, the insurance policy subsequently issued stated it was effective at 12:01 a.m. the day the binder was signed rather than sometime after 3:00 p.m. when the binder was actually executed. Whether this practice arises from convenience to avoid computation of partial day premiums or to facilitate obtaining "edge to edge" or continuous coverage is unknown.

The question we must decide is whether the particular facts herein take the case out from under the rule that an insurance company cannot retrospectively avoid coverage to an injured innocent third party on the grounds of fraud or misrepresentation in the application for insurance. We believe that they do.

Under the Kansas Automobile Injury Reparations Act (K.S.A. 40-3101 *et seq.*), before a motor vehicle may be registered the

owner must obtain liability insurance. K.S.A. 1991 Supp. 40-3118(a) provides, in part:

"No motor vehicle shall be registered or reregistered in this state unless the owner, at the time of registration, has in effect a policy of motor vehicle liability insurance covering such motor vehicle, as provided in this act, or is a self-insurer thereof, or the motor vehicle is used as a driver training motor vehicle, as defined in K.S.A. 72-5015, and amendments thereto, in an approved driver training course by a school district or an accredited nonpublic school under an agreement with a motor vehicle dealer, and such policy of motor vehicle liability insurance is provided by the school district, or accredited nonpublic school. As used in this section, the term 'financial security' means such policy or self-insurance. The director shall require that the owner certify that the owner has such financial security, and the owner of each motor vehicle registered in this state shall maintain financial security continuously throughout the period of registration. When an owner certifies that such financial security is a motor vehicle liability insurance policy meeting the requirements of this act, the director may require that the owner or owner's insurance company produce records to prove the fact that such insurance was in effect at the time the vehicle was registered and has been maintained continuously from that date."

The public policy behind the Act is to assure that coverage of at least the statutory minimum levels of liability insurance exists on any vehicle covered by the Act. It is against that public policy to allow insurance companies to renege on the coverage promised as to an innocent injured third party because of an insured's fraudulent acts in obtaining the insurance. Here it is undisputed there was no coverage at the time the third party was injured. Joseph Cox's subsequent fraudulent acts resulted in a policy being issued which listed the effective time as 12:01 a.m. of the day the binder was executed—thereby ostensibly covering the accident which had already occurred. Had Joseph Cox done nothing after learning of the accident there would be no policy to dispute. The injured party would have been in exactly the same situation he was in when injured. The rule prohibiting an insurance company from taking away coverage which existed when the injury occurred and the reasons for the rule do not apply. The Cox vehicle was not registered or being operated at the time of the injury as a result of or in reliance on Alliance having insured the same.

We do not believe rescission which would void the policy *ab initio* is appropriate herein. The appropriate relief is to reform

the policy to exclude coverage for the accident herein by making the policy effective at the time the binder was executed.

Additionally, to hold otherwise would tend to defeat the public policy which lies behind mandatory automobile insurance and encourage people to risk operating uninsured motor vehicles. If one can wait to buy insurance until after an accident occurs and thereby gain coverage therefor, it lessens the incentive to comply with the mandatory insurance law of Kansas.

We conclude that the district court erred in refusing to reform the insurance policy herein to exclude coverage for the Slaby accident.

By virtue of the foregoing determination, we need not address the second issue in the appeal relative to whether or not the $100,000 coverage in the policy should be reduced to the $25,000 statutorily mandated minimum coverage.

The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with the opinion herein.