**NATIONAL INSURANCE ASSOCIATION,**
Appellant,

v.

**Michael PEACH and Gayla Peach, Co–Administrators of Estate of Kenneth Ray Peach; Danny Ray Brown; and Kevin Mark Brown, Appellees.**

No. 95–CA–1106–MR.

Court of Appeals of Kentucky.

Aug. 9, 1996.

Charles E. English, Jr., Robert A. Young, Bowling Green, for Appellant.

Ilam E. Smith, Louisville, for Appellees Michael Peach and Gayla Peach, Co–Administrators of the Estate of Kenneth Ray Peach.

Before WILHOIT, C.J., and COMBS and HUDDLESTON, JJ.

## OPINION

COMBS, Judge.

National Insurance Association appeals from an order of the Jefferson Circuit Court granting summary judgment in favor of Michael Peach and Gayla Peach, in their capacity as co-administrators of the estate of Kenneth Ray Peach. The court determined that, as to innocent third parties, the insurer could not rescind an automobile liability policy that it alleged to have been procured by the fraud of its insured. As a result, the court found that the insurance coverage was in full force and effect at all relevant times. After carefully reviewing the facts of this case and considering the state of the law, we affirm.

The facts are not in dispute. In March 1992, Kevin Brown was operating a 1984 Ford Thunderbird automobile insured by National Insurance Association (hereinafter "National"). He was intoxicated and struck a pedestrian, Kenneth Ray Peach. Neither Kevin Brown nor his passenger, Danny Brown, was injured as a result of the collision. Peach, however, suffered devastating injuries and died as a result.

Following its investigation, National brought this action for a declaration of rights under the automobile insurance policy issued by it to Danny Brown through Gary Arnold and Associates Insurance Agency in Louisville. National contended that the policy was void from its inception because of material misrepresentations made by Danny Brown during the application process. National relies on Danny Brown's failure to disclose that Kevin Brown, who participated in the purchase of the vehicle and was expected to drive it regularly, would be a driver of the automobile. In support of its contention that Danny Brown made material misrepresentations in order to procure the insurance policy, the affidavit of National's agent specifies (and it has not been disputed) that the insurer would not have issued the policy at the same premium rate if the true facts had been made known to it as required by the application for the policy.

Shortly after the filing of the action, an intervening complaint was filed on behalf of Michael Peach and Gayla Peach, co-administrators of the estate of Kenneth Ray Peach. The Peach estate asserted claims against Kevin Brown and Danny Brown and alleged that National had acted with "bad faith" in denying the Peach estate's claim.

Following discovery, each party made motions for summary judgment. After reviewing the inconsistent statements of Kevin Brown, National concluded that a disputed fact existed as to whether a fraud had been perpetrated by Danny Brown during the

preparation of his application for insurance precluding the entry of judgment in its favor. As a result, it abandoned its summary judgment motion.

Both parties candidly admit that there has never been a finding of fact made with respect to whether material misrepresentations were made during the application process. Nevertheless, the Peach estate pursued its summary judgment motion. It contended that courts across the country are in complete agreement that rescission of an automobile liability policy is unavailable where, in jurisdictions having compulsory insurance laws, an innocent third party (as distinguished from an insured who might have misrepresented the facts) is seeking the coverage provided by the policy.

Following oral argument and consideration of the case law, the trial court agreed that National could not rescind the insurance policy and determined that the Browns were entitled to liability coverage under the policy. It granted the Peach estate's motion for summary judgment in a memorandum decision and order entered on March 16, 1995. The trial court subsequently amended its order to reflect its dismissal of National's complaint with prejudice. This appeal followed.

■ On appeal, National maintains that Kentucky case law does not support the requirement that an insurer provide coverage where an insured materially misrepresented information on an application. National also contends that Kentucky's compulsory liability insurance laws cannot be construed so as to prohibit an insurer from voiding coverage where an insured has submitted false information on an application. While there clearly is merit in the general application of this rule to an insured, the argument must fail as to innocent third parties.

■ National has correctly noted that common law permitted rescission of a liability policy for fraud and misrepresentation as a remedy available to an insurance company. *See, Lancaster Ins. Co. v. Monroe, Jefferson and Co.,* 101 Ky. 12, 39 S.W. 434 (1897); *Knights of Maccabees v. Shields,* 156 Ky. 270, 160 S.W. 1043 (1913); *Security Life Ins. Co. v. Black's Adm'r,* 190 Ky. 23, 226 S.W.

355 (1920). However, the specific requirements of Kentucky's Motor Vehicle Reparations Act, KRS Chapter 304, Subtitle 39, (hereinafter "the MVRA"), and the public policy goals it means to address, supersede general principles of insurance law as broadly applied. The significant changes brought about by the MVRA were aimed at a specific objective: to insure continuous liability insurance coverage in order to protect the *victims* of motor vehicle accidents and to insure that one who suffers a loss as the result of an automobile accident would have a source and means of recovery. *Crenshaw v. Weinberg,* Ky., 805 S.W.2d 129 (1991). Our courts have explained that the MVRA is social legislation that must be liberally construed to accomplish those objectives. *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.,* Ky., 795 S.W.2d 62 (1990).

Mandatory insurance legislation has been adopted throughout the country. It forms the basis for the decisions of many courts confronted with the issue presently before us and we find their reasoning persuasive. *See e.g., Erie Ins. Exchange v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996); *Munroe v. Great American Ins. Co.,* 234 Conn. 182, 661 A.2d 581 (1995); *Ferguson v. Employers Mut. Casualty Co.,* 254 S.C. 235, 174 S.E.2d 768 (1970); *Van Horn v. Atlantic Mut.,* 334 Md. 669, 641 A.2d 195 (1994); *Continental Western Ins. Co. v. Clay,* 248 Kan. 889, 811 P.2d 1202 (1991); *Sentry Indem. Co. v. Sharif,* 248 Ga. 395, 282 S.E.2d 907 (1981); *Midland Risk Management Co. v. Watford,* 179 Ariz. 168, 876 P.2d 1203 (App.1994); *Odum v. Nationwide,* 101 N.C.App. 627, 401 S.E.2d 87 (1991); *Fisher v. New Jersey Auto. Full Ins.,* 224 N.J.Super. 552, 540 A.2d 1344 (1988); *American Underwriters Group v. Williamson,* 496 N.E.2d 807 (Ind.App.1986); *United Sec. Ins. Co. v. Comm'r of Ins.,* 133 Mich.App. 38, 348 N.W.2d 34 (1984); *Allstate Ins. Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550 (1973); *Ferrell v. Columbia Mut. Casualty Ins. Co.,* 306 Ark. 533, 816 S.W.2d 593 (1991); *see also* 7 Am.Jur.2d *Automobile Insurance,* § 37 (1980). Without exception, these courts have held that where an innocent third party has suffered injury from an insured's operation of an automobile, the insurer is prohibited from rescinding the policy—even where the

insurance coverage was procured through the misrepresentations of the insured. They have held that compulsory insurance statutes have abrogated the insurance company's right to rescind the policy with regard to claims of persons *not involved* in making the misrepresentation and that the only remedy for an insurer is a prospective cancellation of the policy in accordance with the statutory scheme regulating motor vehicle insurance. Keeping in mind the remedial nature and purpose of the legislation, we conclude that Kentucky's mandatory insurance scheme and the public policy underlying it require us to follow the "uniform course of judicial decisions" emanating from other states with compulsory motor vehicle insurance statutes. *Van Horn, supra.*

The provisions of the MVRA parallel those of other jurisdictions. KRS 304.39–080(5) requires every owner of a motor vehicle registered or operated in the Commonwealth to provide *continuously* a contract of insurance or other security for payment of *any tort liability* arising from the use of the vehicle. KRS 304.39–085 requires every authorized insurance company to report all insured persons whose policies were terminated to the Department of Vehicle Regulation. KRS 304.39–090 prohibits an owner of a motor vehicle who ceases to maintain security from operating or permitting the operation of the vehicle in the Commonwealth. KRS 304.20–040 provides that automobile liability policies may be cancelled by the insurer due to: (1) non-payment of a premium or (2) the suspension or revocation of a driver's license or motor vehicle registration of the named insured (or anyone else customarily operating the vehicle) during the policy period.

The requirements for notice of cancellation are strict. While KRS 304.20–040(2)(b) provides an exception to the grounds for cancellation where the cancellation is undertaken within sixty (60) days of the issuance of the policy, it clearly does not provide for the retrospective cancellation of a policy. In light of these comprehensive provisions and the compelling public policy underlying them, we find it difficult—as have other courts—to reconcile the existence of an *absolute right to rescind* an insurance policy so as to avoid liability to an innocent third party. *See American Underwriters Group, supra.* We believe that the provisions governing automobile liability policies demonstrate the legislature's intention to protect the public and third-party victims. Once liability coverage is issued and a driver is permitted to operate the vehicle, the public is entitled to rely upon it until it is prospectively cancelled in the legislatively prescribed fashion. To hold otherwise would "tend to emasculate the act and defeat its express purpose." *Beacon Ins. Co., supra* at 63.

Moreover, we are not persuaded that the provisions of KRS 304.14–110 [1] cited by National as the codification of the common law right to rescission controls the outcome of this case. KRS 304.20–030, another relevant provision, provides as follows:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.

These two provisions were analyzed by a panel of this court in the case of *State Farm*

---

**1.** KRS 304.14–110 provides, in pertinent part, as follows:

All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

*Mut. Auto. Ins. Co. v. Crouch,* Ky.App., 706 S.W.2d 203 (1986). Although that court faced the similar question of whether an insurer could rescind the insurance contract, the facts and the court's holding involved a claim by the *insured* who had made the misrepresentations—not an innocent third-party claimant. While "[t]he distinction between first and third party claims against a cancelled or void policy is of critical importance in determining whether coverage is afforded," *Dillard v. Hertz Claim Management,* 277 N.J.Super. 448, 650 A.2d 1, 2 (1994), we nevertheless find the court's evaluation of 304.14–110 and 304.20–030 to be instructive.[2] In *Crouch,* the court noted that KRS 304.14–110 reflects a public policy requiring "those who apply for insurance [to] be honest and forthright in their representations." *Id.* at 207. And, in rejecting the insured's claim that the insurance policy could not be rescinded due to her material misrepresentations, the court found the public policy behind KRS 304.14–110 to be of paramount importance. Clearly, the fact that the court was addressing the insured as claimant rather than an innocent third party was central to the court's holding.

While we believe that the court's reasoning is sound, we do not believe that the conclusion reached in *Crouch* is required here.

Under the circumstances before us, we do not believe that the codified right to recision is absolute. The provisions of the MVRA cited above, coupled with the public policy underlying them, requires that the insurer rather than an innocent third party bear the risk of intentional material misrepresentations made by an insured. *See, Continental Western Ins. Co., supra, citing United Sec. Ins. Co., supra.*

In summary, we conclude that the compulsory automobile insurance statutes, when read together, abrogate the right of an insurer to rescind automobile liability insurance so as to deny recovery to an innocent third-party claimant. Rescission of the insurance contract in this limited instance is precluded—even though a fraud may have been perpetrated in securing the coverage.

Based upon the foregoing, the judgment of the Jefferson Circuit Court is affirmed.

All concur.

---

**2.** Many cases have held that an insurer *could avoid* first party claims for benefits by *its own insured* where the insured submitted a fraudulent application. These cases have found that the policy considerations involving an insured as claimant are vastly distinguishable from situations involving innocent third party claimants.