**William H. BENNETT, Appellant,**

v.

**Yvonne J. HEDGLIN and Pate Insurance Agency, Inc., Appellees.**

**No. S–8830.**

Supreme Court of Alaska.

Feb. 11, 2000.

---

Rebecca J. Hozubin, Law Offices of George M. Kapolchok, Anchorage, for Appellant.

Gary A. Zipkin and Kari C. Kristiansen, Guess & Rudd, P.C., Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

William Bennett lost his Anchor Point cabin in a fire and now argues that Pate Insurance Agency, Inc. must cover the loss because it issued, and never canceled, a binder on the property. We conclude that, regardless of the binder's existence at the time of the loss, Bennett made material misrepresentations on his insurance application that void-

ed any coverage he might have had. Accordingly, we affirm the superior court's grant of summary judgment in favor of Pate.

## II. *FACTS AND PROCEEDINGS*

In March 1996 William Bennett contacted Yvonne Hedglin, a licensed insurance agent at Pate Insurance Agency, Inc., an independent insurance agency. He sought homeowner's insurance on a log cabin located outside Anchor Point. After their conversation, Hedglin contacted Montgomery & Collins and asked it to insure Bennett's property. She then told Bennett to send her photographs of the cabin and a first premium payment of $779. On June 18 Bennett sent Hedglin the photos and the check.

After receiving the photos and the check, Hedglin on June 20 faxed Bennett the Montgomery & Collins application form, along with a note stating: "As soon as I receive the signed forms back via fax, I will bind coverage for you." Bennett faxed the completed and signed application to Hedglin the same day. Hedglin gave Bennett's check to Pate's accountant for deposit and faxed the completed application to Montgomery & Collins, asking that it bind coverage for Bennett.

On June 21 Montgomery & Collins informed Hedglin that it had declined Bennett's application for insurance. On the same day, Hedglin left Bennett a telephone message stating that Montgomery & Collins had rejected his application and asking him to call her. Despite the rejection, Pate cashed Bennett's premium check on June 24. On June 25 Bennett returned Hedglin's call. She told him that Montgomery & Collins would not insure the cabin and that he should look elsewhere for coverage. Bennett informed Hedglin that he possessed an existing homeowner's policy on an Anchorage residence through a different insurer, Allstate.[1] Hedglin advised Bennett to contact Allstate to obtain a policy on the Anchor Point cabin. Hedglin told Bennett that if Allstate did not insure the cabin, Bennett should call her

back and she would attempt to obtain insurance for him. She advised him, however, that his remaining coverage options through Pate were very limited. After speaking with Bennett, Hedglin wrote him a "close-out letter" summarizing their phone call and sent it to Bennett along with a full refund and the cabin photographs.

Bennett contacted Allstate on June 27 and began negotiations to insure the Anchor Point cabin. He spoke with an insurance agent, who requested that he forward photographs of the cabin and a premium check to Allstate. Although he intended to apply to Allstate for insurance on the cabin, Bennett never completed an application. In his deposition, he explained that he could not forward the photographs or premium payment to Allstate because Pate had not yet returned these items to him.

On July 2, 1996, the Anchor Point cabin burned to the ground. Bennett filed a claim with Pate, but Pate denied coverage. On July 22 Hedglin returned to the office after a vacation and discovered that Bennett's close-out letter and refund check had been returned to Pate after three unsuccessful delivery attempts.

Bennett sued Hedglin and Pate (collectively Pate) in August 1997 for damages resulting from the fire and for defamation.[2] Both parties moved for summary judgment. Bennett requested oral argument, but Judge Rene J. Gonzalez denied the motion after "finding that the parties memoranda adequately present the parties' respective positions and legal arguments and additionally finding that oral argument would not be helpful to the court." On June 2, 1998, Judge Gonzalez granted summary judgment in Pate's favor. Bennett moved for reconsideration, which the court denied. Bennett appeals.

## III. *STANDARD OF REVIEW*

 This court reviews de novo a trial

---

**1.** Although Allstate provided Bennett's existing insurance, he may have mistakenly told Hedglin that his primary insurer was State Farm. Some of the correspondence from Pate and litigation-related documents accordingly mention State Farm rather than Allstate. For simplicity, we refer to Bennett's primary insurer as Allstate.

**2.** Bennett has not appealed the superior court's dismissal of the defamation claim.

court's decision to grant summary judgment.[3] Summary judgment is appropriate only when there are no material disputed facts such that the moving party is entitled to judgment as a matter of law.[4] We must draw all reasonable inferences in favor of Bennett, the non-moving party.[5]

## IV. DISCUSSION

### A. Bennett's Misrepresentations on the Insurance Application Voided Any Insurance Coverage.

■ Bennett claims that Hedglin's promise to insure the cabin created a valid insurance binder that was not effectively canceled. Pate alleges that Bennett made numerous misrepresentations on his insurance application and therefore may properly be denied coverage.

In particular, Pate points to Bennett's statements with respect to his full-time residence, business conducted on the Anchor Point property, and losses occurring on the premises in the past five years. Bennett claimed that he resided full time at the Anchor Point cabin and did not own, occupy, or rent any other dwelling. Bennett also stated that he conducted no business on the premises despite his intention to open a sawmill there in the future. Further, Bennett stated that no insured or uninsured losses had occurred at the Anchor Point cabin within five years, despite a 1995 vandalization of the premises.

Alaska Statute 21.42.110 states that "[m]isrepresentations, omissions, concealment of facts, and incorrect statements" may prevent recovery under an insurance contract when they are either:

(1) fraudulent;

(2) material either to acceptance of the risk, or to the hazard assumed by the insurer; or

(3) the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required ... by the application for the policy.

### 1. Bennett's application responses constituted misrepresentations.

■ We must first determine whether Bennett's application responses were false or misleading so as to qualify as a misrepresentation under AS 21.42.110. Generally, the question of whether an applicant's statements were false or misleading is a jury question.[6] But when the facts are not in dispute—such as when an applicant admits that a statement is false or when there is no conflicting evidence—courts can decide this question as a matter of law.[7] Bennett's deposition testimony reveals that he may have given false or misleading responses to a number of the application's underwriting questions.

In particular, we conclude that Bennett misrepresented the fact that he resided full time in the Anchor Point cabin, rather than in one of his two homes in Anchorage. In response to Question 6 of the application, Bennett denied owning, occupying, or renting any residence other than the Anchor Point cabin.[8] But Bennett later admitted that, at the time of the application, he owned two homes in Anchorage, living in one and renting out the other. In response to Question 7 of the application, Bennett stated that he was a "full-time resident" of the Anchor Point cabin.[9] Bennett later explained this re-

3. See Parson v. Marathon Oil Co., 960 P.2d 615, 618 (Alaska 1998).

4. See id.

5. See id.

6. See Spellmeyer v. Tennessee Farmers Mut. Ins. Co., 879 S.W.2d 843, 846 (Tenn.App.1993).

7. See id.

8. Question 6: "Any other premises, property owned, occupied or rented by or to applicant?" Bennett's Answer: "No."

9. Question 7: "Applicant owns and is full-time resident of home?" Bennett's Answer: "Yes."

sponse by stating that he *intended* to reside full time at the Anchor Point cabin. Based on the inconsistency between application responses and his deposition testimony, we conclude, as a matter of law, that Bennett falsely stated the location of his full-time residence, thereby providing "[m]isrepresentations, omissions, concealment of facts, and incorrect statements"[10] in his insurance application.

### 2. *Bennett's misrepresentations were material to the insurer's acceptance of the risk.*

To justify denying coverage under AS 21.42.110, Pate primarily argues that the misrepresentations about Bennett's full-time residence were material to the insurer's acceptance of the risk.[11] Pate urges this court to hold that Bennett's false statements and omissions were material as a matter of law. In general, materiality is a question of fact for the jury, but courts may decide it as a matter of law when "the evidence is such that there can be no reasonable difference of opinion."[12]

Here, Pate presented evidence that Bennett's misrepresentations regarding his full-time residence were material to an insurer's acceptance of the risk. An insurance expert retained by Pate concluded that Bennett's truthful revelations about his Anchorage residency and Anchor Point vacation cabin "would make the risk ineligible for Homeowner's Coverage." This expert stated that "[t]he fact that the dwelling is not a primary dwelling is material both to the acceptance of the risk and to its eligibility for the kind of insurance sought, namely a homeowners policy." This expert testimony comports with common sense—full-time residency in a dwelling increases the chances of promptly detecting and mitigating fires and other hazards. And a remote vacation home may be more likely subject to break-ins and vandalism, as Bennett's cabin was in 1995. Thus, whether the Anchor Point cabin was Bennett's full-time residence was material to the insurer's decisions regarding whether to insure the cabin and the proper premium rate. Bennett failed to present any evidence showing that his answers were not material to the risk of insuring the Anchor Point cabin. We therefore hold that Bennett's misrepresentation regarding full-time residence in the Anchor Point cabin is material to the risk of insuring that cabin.

### 3. *Bennett's material misrepresentations would render any coverage provided by the binder void ab initio under the insurer's rescissionary remedy.*

When an applicant misrepresents a fact material to the acceptance of the risk, AS 21.42.110 permits the insurer to deny coverage under the policy or binder. Other courts have construed analogous statutes as preserving the insurer's common law remedy of rescission—a remedy which renders the policy void *ab initio*.[13] But AS 21.36.210(f)(3) and AS 21.36.220 expressly state that fraud and material misrepresentation are grounds for cancellation—a pre-loss

---

10. AS 21.42.110.

11. Bennett contends that any false statements were not material to the risk because Montgomery & Collins stated an altogether different reason for denial of coverage—that the cabin was uninsured at the time of his application. But this fact is not relevant to the materiality analysis. The materiality inquiry addresses the question of whether truthful answers would have altered the insurer's decision to insure the property and set the premium. *See* Couch on Insurance 3d § 81:78. Indeed, such claims often arise after a policy has issued and a loss sustained. *See, e.g., Northern Life Ins. Co. v. Ippolito Real Estate Partnership*, 234 Ill.App.3d 792, 176 Ill. Dec. 75, 601 N.E.2d 773, 775–76 (1992); *Sanford v. Federated Guar. Ins. Co.*, 522 So.2d 214, 215 (Miss.1988).

12. *Ruhlig v. American Community Mut. Ins. Co.*, 696 N.E.2d 877, 880 (Ind.App.1998); *see also Miller v. Nationwide Ins. Co.*, 202 Ga.App. 737, 415 S.E.2d 700, 701 (1992); *Ippolito*, 176 Ill. Dec. 75, 601 N.E.2d at 780; *Hanover Ins. Co. v. Leeds*, 42 Mass.App.Ct. 54, 674 N.E.2d 1091, 1094–96 (1997); *Continental Ins. Co. v. RLI Ins. Co.*, 161 A.D.2d 385, 555 N.Y.S.2d 325, 327–28 (1990).

13. *See, e.g., Federal Mut. Ins. Co. v. Deal*, 239 F.Supp. 618, 621–22 (S.D.W.Va.1965) (applying West Virginia law); *Prudential v. Estate of Rojo-Pacheco*, 192 Ariz. 139, 962 P.2d 213, 217–18 (App.1997).

remedy which renders the policy void prospectively from the effective date of cancellation.[14] The question then becomes whether these cancellation provisions abrogate the common law remedy of rescission for fraud or material misrepresentation and establish cancellation as the sole method for denying coverage under AS 21.42.110.

The legislative history and the statutory framework reveal no evidence that the legislature intended to abrogate this remedy.[15] In fact, statutory language added at the same time as AS 21.36.210 and AS 21.36.220 specifically contemplates rescission as a remedy.[16] The cancellation provisions in AS 21.36.210 and AS 21.36.220 do not exclude the remedy of rescission, but rather protect policy holders by limiting the grounds and immediacy of cancellation.[17] Other courts have construed analogous statutory provisions addressing cancellation due to fraud and material misrepresentation as preserving the insurer's right to rescission, at least with respect to claims made by the insured and not by innocent third parties.[18] We agree with this approach and construe AS 21.42.110

to codify the availability of rescission as a remedy.

Public policy justifies retaining the rescissionary remedy. If AS 21.36.220 barred rescission, the mendacious applicant would retain coverage for which he is ineligible until ten days after the insurer both discovers the false representations and sends notice of cancellation. And often the insurer will not discover the false or misleading character of the applicant's statements until after the loss has occurred. Permitting only prospective cancellation would place upon the insurer the risk of the applicant's misrepresentations and the burden of investigating the applicant's responses to ascertain their veracity and completeness.[19]

Notice-of-cancellation provisions are designed to protect the insured by providing time to obtain insurance elsewhere before the cancellation becomes effective and the insured is exposed to risk without protection.[20] If the insured procured the policy by fraud or material misrepresentation, he should not benefit from this protection by recovering on personal claims.[21] Thus, we

**14.** Under AS 21.36.210(f), "[a]n insurer may not exercise its right to cancel a policy of personal insurance ... except for the following reasons: ... (3) discovery of fraud or material misrepresentation made by the insured ... in obtaining the insurance or ... in pursuing a claim under the policy." Under AS 21.36.220(a), notice of cancellation for reasons of fraud or material misrepresentation must be mailed "at least 10 days before the effective date of cancellation."

**15.** See Methonen v. Stone, 941 P.2d 1248, 1251 n. 4 (Alaska 1997) ("Legislative enactments are presumed not to abrogate the common law, except where the intent to do so is manifest.").

**16.** AS 21.36.255 ("If an insurance policy is cancelled, rejected, or rescinded....").

**17.** See generally Couch on Insurance 3d § 30:6.

**18.** See Rojo–Pacheco, 962 P.2d at 222 n. 13; Dunn v. Safeco Ins. Co. of Am., 14 Kan.App.2d 732, 798 P.2d 955, 958–60 (1990); United Sec. Ins. Co. v. Commissioner of Ins., 133 Mich.App. 38, 348 N.W.2d 34, 35 (1984); Cunningham v. Citizens Ins. Co., 133 Mich.App. 471, 350 N.W.2d 283, 286 (1984) (cancellation statutes do not preclude rescission); Glockel v. State Farm Mut. Ins. Co., 224 Neb. 598, 400 N.W.2d 250, 255–57 (1987) (enactment of cancellation statute did not abrogate common law remedy of rescission).

**19.** In jurisdictions where the cancellation statutes are deemed to proscribe rescission, courts have stated that insurers should bear this burden of an initial investigation of the application responses. See, e.g., Wisconsin Hous. & Econ. Dev. Auth. v. Verex Assurance, Inc., 159 Wis.2d 57, 464 N.W.2d 10, 14 (App.1990).

**20.** See Couch on Insurance 3d § 32:1.

**21.** But an absolute right to rescind could unfairly burden an innocent third party who may be relying on the insured status of the other party. Other courts have held that cancellation statutes have abrogated the right to rescission where it would deny coverage of claims brought by innocent third parties. See Munroe v. Great Am. Ins. Co., 234 Conn. 182, 661 A.2d 581, 584–85 (1995) (finding statutory abrogation of insurer's right to rescind insurance ab initio as to deny recovery to innocent third party); Continental W. Ins. v. Clay, 248 Kan. 889, 811 P.2d 1202, 1207 (1991) (permitting rescission as against insured but not against innocent third party); Dunn, 798 P.2d at 958–60 (discussing cases distinguishing insured and innocent third-party claims); National Ins. Ass'n v. Peach, 926 S.W.2d 859, 861–863 (Ky. App.1996). These courts have reasoned that the risk for the insured's material misrepresentations is more fairly placed upon an insurer than an innocent third party. See, e.g., Peach, 926 S.W.2d at 863. Because a third-party claim is

hold that the insurer may rescind the binder or policy—rendering the contract void *ab initio*—when the applicant makes a misrepresentation material to the risk.[22]

In this case, Pate seeks to deny coverage for a loss suffered by Bennett. Because Bennett made material misrepresentations on his application, Pate was entitled to rescind Bennett's binder *ab initio* and deny coverage of the cabin fire. Accordingly, we hold that the superior court properly granted summary judgment in Pate's favor.

### B. *The Superior Court's Refusal to Grant Oral Argument Was Not Reversible Error.*

Finally, Bennett argues that the superior court improperly denied oral argument before granting summary judgment. Pate concedes that under Civil Rule 77(e), the court should have granted oral argument, but argues that this error is harmless. We agree that the superior court erred in denying oral argument but conclude that the denial does not constitute reversible error.

Under Rule 77(e)(4), a judge lacks discretion to deny oral argument on a summary judgment motion:

> Except on motions to dismiss; motions for summary judgment; motions for judgment on the pleadings; other dispositive motions; motions for delivery and motions for attachment, oral argument shall be held only in the discretion of judge.

In this case, both parties moved for summary judgment. The superior court denied Bennett's request for oral argument and subsequently granted summary judgment in Pate's favor. Regardless of the strength and thoroughness of the parties' briefing, the superi-

or court should have permitted oral argument on these dispositive motions. Thus, the superior court erred in denying oral argument.

But this error is harmless because Bennett has failed to demonstrate that the denial of oral argument caused him prejudice. "A party on appeal who alleges that oral argument was improperly denied must show both that the denial was in error and that the error caused substantial prejudice."[23] This case was thoroughly briefed below, and Bennett points to no arguments that he was unable to make at the trial level. He argues only that the superior court wrongly adjudicated his summary judgment motion on its merits. Because Bennett has neither alleged nor demonstrated any prejudice, we reject Bennett's claim that the superior court's denial of oral argument was reversible error.

### V. *CONCLUSION*

Regardless of the binder's existence at the time of the loss, Bennett's material misrepresentations on his insurance application void *ab initio* any coverage the binder would have provided. Bennett has not shown that the lack of oral argument prejudiced him and therefore has failed to demonstrate a reversible error. Accordingly, we AFFIRM the superior court's grant of summary judgment in its entirety.

not before us, we need not decide that issue in this case.

**22.** *See, e.g., Fabric v. Provident Life & Acc. Ins. Co.,* 115 F.3d 908, 912–14 (11th Cir.1997), *cert. denied,* 523 U.S. 1095, 118 S.Ct. 1563, 140 L.Ed.2d 794 (material misrepresentation on application permits insurer to unilaterally rescind policy under Florida law); *Deal,* 239 F.Supp. 618 at 621–22 (applying West Virginia law); *State Farm Mut. Auto. Ins. Co. v. Crouch,* 706 S.W.2d 203, 205–07 (Ky.App.1986) (misrepresentation material to risk entitles insurer to void binder *ab initio* under similar misrepresentation statute);

*United Sec. Ins. Co.,* 348 N.W.2d at 36 (automobile insurance binder rescinded *ab initio* ); *Claborn v. Washington Nat'l Ins. Co.,* 910 P.2d 1046, 1049–51 (Okla.1996) (rescission due to misrepresentation material to risk); *Haas v. Integrity Mut. Ins. Co.,* 4 Wis.2d 198, 90 N.W.2d 146, 150 (1958) (insurer may deny liability under binder because of material misrepresentations in application).

**23.** *Cleary Diving Serv., Inc. v. Thomas, Head & Greisen,* 688 P.2d 940, 942 (Alaska 1984); *see also Breeze v. Sims,* 778 P.2d 215, 218 (Alaska 1989).