*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| SMALLWOOD CREEK, INC., | ) | |
| | ) | Supreme Court No. S-17774 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-19-02428 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BUILD ALASKA GENERAL | ) | |
| CONTRACTING, LLC; WESTERN | ) | No. 7601 – July 15, 2022 |
| NATIONAL MUTUAL INSURANCE | ) | |
| COMPANY; and LEXON | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Robert A. Sparks, The Law Office of Robert A. Sparks, and Thomas R. Wickwire, Fairbanks, for Appellant. Jason J. Ruedy, Law Offices of Royce & Brain, Anchorage, for Appellees.

Before: Winfree, Maassen, Carney, and Borghesan, Justices. [Bolger, Chief Justice, not participating.]

BORGHESAN, Justice.

## I.     INTRODUCTION

A general contractor hired a subcontractor to provide material for a project at a state park. After the project was completed, the general contractor sent the

subcontractor a check described as "final payment." The subcontractor, believing it was owed more, initially refused to accept the check. Months later, the subcontractor cashed the check but then attempted to repay the amount to the general contractor. The general contractor refused repayment, claiming that the subcontractor's cashing the check constituted satisfaction of its claim of payment.

The superior court granted summary judgment to the general contractor, ruling that the evidence established an accord and satisfaction. We hold that there is a genuine dispute of material fact about two requirements for an accord and satisfaction: whether the payment was tendered in good faith, and whether there was a bona fide dispute about the amount owed. We therefore vacate the judgment and remand for further proceedings.

## II.    FACTS & PROCEEDINGS

### A.    Facts

Build Alaska General Contracting, LLC (Build Alaska) executed a prime contract[1] with the State of Alaska, Department of Natural Resources (DNR) for a trailhead improvement project at the Chena River State Recreation Area (Chena River Project). The Chena River Project involved improvements at three separate trailhead facilities.

In June 2018 Build Alaska and Smallwood Creek, Inc. (Smallwood) entered into a subcontract agreement for work on the Chena River Project. Smallwood agreed,

---

[1]    A prime contract is a contract entered into between the client and the contractor, who is responsible "for the completion of the entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." *Contractor*, BLACK'S LAW DICTIONARY (11th ed. 2019).

among other things, to furnish the Type A borrow material[2] that the bid schedule for the project had called for. The subcontract notes in its "Services and Rates" section that quantities of Type A borrow material will be totaled by means of truck load counts. The subcontract's list of rates contains two lines for Type A borrow material: one that Smallwood stockpiles and loads onto trucks, and one that Build Alaska self-loads from the stockpile. The former was agreed to at a rate of $8.00 per cubic yard. The latter's rate was not clearly specified in the subcontract.

However, Todd VanLiere, a co-owner of Build Alaska, mentioned a rate of $4.00 per cubic yard for self-loaded borrow in an email exchange with Karl Benson, the corporate secretary and vice president of Smallwood. VanLiere indicated on June 3 that Build Alaska "determined [they] would be loading the Borrow [themselves]" at $4.00 per cubic yard. Benson replied the next day, confirming the $4.00 per cubic yard rate for self-loaded borrow and specifying that "yardage is counted as yards loaded in the truck." But later that day in a separate email thread, VanLiere wrote that instead of loading the borrow themselves as he had indicated in his initial email, "[Build Alaska] would like to have [Smallwood] do all of the stockpiling and loading of Trucks for the Type A Borrow at $8.00 [per cubic yard] as quoted." VanLiere's email also stated, among other things, that "[t]ruck counts will be confirmed with the survey quantities."[3] Benson replied, indicating that they "may need to come to an agreement as to how to calculate final quantities for payment" to account for material lost during hauling, compaction of the material at the project site, and quantities rejected by the State for not

---

<sup>2</sup>     The prime contract describes "borrow material" as material, such as sand or gravel, that is "borrowed" from one site for use at another site.

<sup>3</sup>     According to State of Alaska Standard Specifications for Highway Construction (Standard Specifications), DNR pays for borrow material by volume, which is to be established by cross-section survey.

conforming to specifications. VanLiere indicated he received this email on June 8, but the record indicates no additional discussions about the terms before the subcontract was finalized on June 13.

Build Alaska paid Smallwood periodically throughout the project. On September 6, 2018, Build Alaska issued a check for $19,543.60 for the Upper Chena Trailhead. A week later, on September 15, 2018, Build Alaska issued another check for $9,960.72 for the Mastodon Trailhead. The memo lines of both checks included the calculation for the total payment issued, the portion of the project they covered, and the words "PAID IN FULL." It is not clear whether the volume was calculated by truck load counts, but after some questioning, Smallwood accepted these payments without dispute.

At the conclusion of the project, Build Alaska provided Smallwood with final survey results on the project. Build Alaska relied upon the survey results to establish the total volume of material furnished by Smallwood and calculate the outstanding amount owed to Smallwood under the subcontract.

Build Alaska then delivered a check to Smallwood in the amount of $37,472.48. Build Alaska wrote in the memo line of the check "Chena River Trail Improvements Final Payment." After receiving the check, Smallwood notified Build Alaska via email that it would not accept the check due to the restrictive endorsement "Final Payment" because it was "half of what is owed [to] us" and that Smallwood would "be forwarding documentation throughout the day to help [Build Alaska] understand [its] liability to the amount stated on [Smallwood's] invoice." An employee of Build Alaska sent an email to Smallwood that same day, stating: "Per Conversation, Contract has been voided since it past [sic] 120 days from last conversation. We are abiding by State of Alaska requirements." Two days later Smallwood wrote back with a counteroffer. It claimed to be owed $78,991.18 but was willing to accept $72,912.78 to settle the dispute.

Despite a series of communications about what Build Alaska owed Smallwood under the contract, the parties were unable to resolve their dispute. Build Alaska rejected Smallwood's counteroffer and maintained that its $37,472.48 payment satisfied Build Alaska's payment obligations under the subcontract. It maintained that the "subcontract agreement incorporates, by reference, the terms of the prime contract, which clearly specifies that all quantities are to be calculated on the basis of cross-section survey." Build Alaska also maintained that the parties' email correspondence before the subcontract was executed indicated that truck counts would be confirmed with survey quantities. Smallwood's counsel sent notice of a claim to Build Alaska's payment bond surety, Western National Mutual Insurance Company, advising that Build Alaska owed Smallwood the principal sum of $85,579.05 on the project.

Four months after receiving the check marked "Final Payment," Benson, the vice president and corporate secretary of Smallwood, cashed it on behalf of the company. Several months later, Smallwood attempted to return the amount of the cashed check ($37,472.48) to Build Alaska via certified mail, with return receipt requested. Smallwood's repayment was returned because it was improperly addressed. Smallwood continued to attempt to repay Build Alaska; however, Build Alaska refused to accept repayment, insisting the payment dispute was resolved when Smallwood cashed the check marked "Final Payment."

## B. Proceedings

Smallwood sued Build Alaska in superior court, alleging breach of contract and breach of the covenant of good faith and fair dealing.[4] Build Alaska then moved for

---

[4] The complaint also included a claim against a surety on a payment bond issued by Western National Mutual Insurance Company and a claim against a contractor's bond posted by Lexon Insurance Company, neither of which are at issue in
(continued...)

summary judgment, arguing that Smallwood's cashing of the check constituted a knowing accord and satisfaction of the claim under AS 45.03.311. Smallwood opposed on several grounds, arguing there was a genuine dispute of material fact on several issues: (1) whether the check marked "Final Payment" was tendered in good faith;[5] (2) whether there was a "bona fide dispute" about the amount of the claim;[6] (3) whether Smallwood had cashed the check knowing it was intended to be full satisfaction of the claim;[7] and (4) whether Smallwood accepted payment under economic duress. Both parties requested oral argument but the court did not hold argument.

The superior court granted summary judgment to Build Alaska. First, the court ruled that Smallwood failed to present evidence showing that Build Alaska did not tender the check in good faith, as required for an accord and satisfaction. It observed that Build Alaska's VanLiere had submitted an affidavit stating "that the check amount was based on Build Alaska's calculation of what it owed Smallwood under the contract" and that Smallwood presented no competing evidence.

Second, the superior court ruled that the amount was subject to a bona fide dispute, determining that "admissible evidence submitted by both Build Alaska and Smallwood establish that there was a genuine, or bona fide, dispute between the parties

---

[4]  (...continued)
this appeal.

[5]  *See* AS 45.03.311(a)(1) (accord and satisfaction requires tender of payment in good faith).

[6]  *See* AS 45.03.311(a)(2) (accord and satisfaction requires that amount of claim be "subject to a bona fide dispute").

[7]  *See* AS 45.03.311(d) (providing that claim is discharged if person who obtains payment on check "knew that the instrument was tendered in full satisfaction of the claim").

over the amount Build Alaska owed Smallwood under the contract prior to Smallwood cashing the check."

Third, the superior court concluded that Build Alaska was entitled to judgment as a matter of law because Smallwood knew that the check was tendered in full satisfaction of its claim against Build Alaska, in accordance with AS 45.03.311(d). It concluded that although Smallwood now claimed that the memo line "Final Payment" was ambiguous, its previous communications with Build Alaska disputing the payment suggested that Smallwood knew that Build Alaska tendered the check as full satisfaction of Smallwood's claims.

Fourth, the court rejected Smallwood's claim of economic duress, concluding that Smallwood presented no evidence that Build Alaska was aware of Smallwood's precarious financial situation and therefore knew that Smallwood would have no choice but to accept Build Alaska's tender. Accordingly the superior court granted summary judgment to Build Alaska.

Smallwood moved for reconsideration. The superior court denied reconsideration and entered final judgment in favor of Build Alaska. Smallwood now appeals.

## III. STANDARD OF REVIEW

We review grants of summary judgment de novo.[8] In doing so, we construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.[9] We affirm the trial court's grant of summary judgment when there are no genuine issues of material fact and the prevailing

---

[8]     *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1267 (Alaska 2016).

[9]     *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014) (quoting *Lum v. Koles*, 314 P.3d 546, 552 (Alaska 2013)).

party is entitled to judgment as a matter of law.[10] "[T]he burden of showing the absence of a genuine issue as to any material fact is upon the moving party."[11] "Whether the evidence presented a genuine issue of material fact is a question of law that we independently review."[12] "Defeating a motion for summary judgment 'only requires a showing that a genuine issue of material fact exists to be litigated, and not a showing that the party will ultimately prevail.' "[13]

## IV.  DISCUSSION

### A.  It Was Error To Grant Summary Judgment On Grounds Of Accord And Satisfaction.

An accord and satisfaction "discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement."[14] Although the doctrine is of common law origin, the legislature has enacted a statute based on the Uniform Commercial Code (UCC) to govern accord and satisfaction through the use of a negotiable instrument.[15] This statute, codified at AS 45.03.311, has four subsections.

---

[10]  *Id.* (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014)).

[11]  *Id.* (alteration in original) (quoting *Wilson v. Pollet*, 416 P.2d 381, 383 (Alaska 1966)).

[12]  *Hahn v. Geico Choice Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018) (quoting *ConocoPhillips Alaska, Inc.*, 322 P.3d at 122).

[13]  *Lockwood*, 323 P.3d at 696 (quoting *Moffatt v. Brown*, 751 P.2d 939, 943-44 (Alaska 1988)).

[14]  WILLISTON ON CONTRACTS § 73:29 (4th ed. 2021).

[15]  *See* AS 45.03.101 ("This chapter may be cited as the Uniform Commercial Code - Negotiable Instruments.").

Subsection (a) establishes the prerequisites for an accord and satisfaction. It provides that the statute will apply if: (1) the person in good faith tendered an instrument to the claimant as full satisfaction of the claim; (2) the amount of the claim was unliquidated or subject to a bona fide dispute; and (3) the claimant obtained payment of the instrument.[16]

Subsection (b) requires that tender of full satisfaction be clear. It provides that, unless an affirmative defense to accord and satisfaction listed in subsection (c) applies, the claim is discharged so long as the "instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."[17]

Subsection (c), in turn, creates an exception for when the payment was processed by mistake.[18] This exception reduces the risk of an inadvertent accord and satisfaction by giving a creditor two options. The creditor may send a conspicuous statement to debtors that communications concerning disputed debts, including instruments tendered in full satisfaction of disputed debts, be sent to a designated person, office, or place. If the payment instrument is not received by the designated person, office, or place, negotiation of the instrument does not discharge the claim (subject to subsection (d)).[19] A creditor that does not send such a "conspicuous statement" to

---

[16]  AS 45.03.311(a).

[17]  AS 45.03.311(b).

[18]  *See* AS 45.03.311(c).

[19]  AS 45.03.311(c)(1).

debtors and erroneously negotiates payment of the check may avoid an accord and satisfaction by repaying the amount of the check within 90 days.[20]

Subsection (d) is designed to ensure that subsection (c)'s exception only applies when there was in fact a mistake, and not when the claimant has second thoughts. It provides that "[a] claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant . . . knew that the instrument was tendered in full satisfaction of the claim."[21] Under subsection (d), "[i]f the creditor takes a full payment instrument knowing that an accord and satisfaction was intended, the rules in subsection (c) designed to prevent an inadvertent accord and satisfaction do not apply."[22]

With this framework in mind, we turn to the superior court's decision to grant summary judgment to Build Alaska on grounds of accord and satisfaction.

### 1. There is a genuine dispute of material fact about whether Build Alaska tendered payment in good faith.

The superior court ruled that there was no genuine dispute of material fact about whether the elements of an accord and satisfaction described in AS 45.03.311(a) were met. It rejected Smallwood's argument that Build Alaska had tendered payment in bad faith, ruling that Smallwood submitted "no admissible evidence that Build Alaska's dispute over the amount owed was not honest or not submitted in observance

---

[20] AS 45.03.311(c)(2); *see also* U.C.C. § 3-311 cmt. 5 (Am. L. Inst. & Unif. L. Comm'n 2017). Subsection (c) addresses the concern that machines and automated processes for processing checks are unable to recognize a "full payment" legend on a check. Michael D. Floyd, *How Much Satisfaction Should You Expect From An Accord? The UCC Section 3-11 Approach*, 26 LOYOLA U. CHI. L.J. 1, 15-16 (1994).

[21] AS 45.03.311(d).

[22] Floyd, *supra* note 20, at 16.

of reasonable standards of fair dealing." We independently review whether the evidence presented a genuine issue of material fact precluding summary judgment.[23]

The concept of good faith tender, for purposes of accord and satisfaction, "refers to the manner in which the tender is offered, not to conduct related to the underlying claim."[24] According to the commentary for the UCC, instances that might amount to bad faith tender include the debtor tendering a very small amount while knowing that the creditor is in great need and "routinely printing full satisfaction language on [its] check . . . whether or not there is any dispute with the creditor."[25]

Although the superior court correctly stated that accord and satisfaction requires a tender made in "observance of reasonable commercial standards of fair dealing,"[26] we disagree with its conclusion that there was no dispute of material fact as to whether Build Alaska's tender met this standard. A reasonable person could conclude that the series of communications between Smallwood and Build Alaska shows otherwise.[27] After receiving Build Alaska's check, Smallwood notified Build Alaska via email that it would not accept the check due to the restrictive endorsement "Final Payment" because it was "half of what is owed" to Smallwood and that Smallwood would "be forwarding documentation throughout the day to help [Build Alaska]

---

[23]     *Hahn v. Geico Choice Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018).

[24]     2 JAMES J. WHITE, ROBERT S. SUMMERS, & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 17:44 (6th ed. 2010).

[25]     U.C.C. § 3-311 cmt. 4.

[26]     *Id.*

[27]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) ("After the court makes reasonable inferences from the evidence in favor of the non-moving party, summary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue.").

understand [Build Alaska's] liability." Build Alaska replied later that day claiming that the subcontract had "been voided since it past [sic] 120 days from last conversation" and insisted that it was "abiding by State of Alaska requirements." But nothing in the subcontract suggests that its requirements would lapse after 120 days. There is also no evidence in the record suggesting that any such timeline was discussed, nor does Build Alaska point to any provision of law or in its contract with the State that would void Smallwood's claim for payment on these grounds. Drawing all inferences in favor of Smallwood, this email may be read to suggest that Build Alaska was simply looking for pretexts to avoid paying what Smallwood claimed it was owed, in turn suggesting that the payment was not tendered in good faith.

Build Alaska argues that because the email mentioning 120 days was sent after Build Alaska tendered the check stating "Final Payment," the email "does not affect [its] good faith in tendering the check to Smallwood." But subsequent actions may be evidence of an earlier state of mind,[28] and Build Alaska cites no cases indicating otherwise.

In addition, a reasonable person could doubt that Build Alaska's final payment was tendered in good faith because of the contrast between this payment and its earlier payments.[29] Build Alaska issued two checks to Smallwood prior to completion of the project: one for the "Upper Chena" portion of the project, another for the "Mastodon" portion of the project. Each check contained the language "paid in full" in the memo line next to a calculation. According to Benson's affidavit, he questioned

---

[28]     *See North Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 585 (Alaska 2005) ("[P]arties' conduct after entering into [a] contract is probative of intent.").

[29]     *Christensen*, 335 P.3d at 520 (summary judgment only appropriate when "no reasonable person could discern a genuine factual dispute on a material issue").

VanLiere about this language and was assured that it did not mean "paid in full" for all Type A borrow material used in each portion of the project; rather, it meant full payment for the quantities listed. As noted earlier, the UCC commentary suggests that routinely printing "full payment" on checks could be evidence of bad faith tender.[30] Accordingly, a reasonable person drawing all inferences in favor of Smallwood could conclude that Build Alaska's repeated use of "full payment" language on its checks regardless of whether the payment fully satisfied its debt suggests a bad faith tactic to trap creditors rather than a good faith offer to settle a debt.

Because there is a dispute of material fact about whether Build Alaska tendered its payment in good faith,[31] it was error to grant summary judgment to Build Alaska on this issue.

### 2. There is a genuine dispute of material fact about whether the claim between Build Alaska and Smallwood was subject to a bona fide dispute.

To establish an accord and satisfaction, the party claiming the debt was discharged must show that "the amount of the claim was unliquidated or subject to a bona fide dispute."[32] The statute does not define bona fide dispute. As noted above, the statute is modeled on the UCC provision regarding accord and satisfaction,[33] which in turn "incorporates the standard common law rules regarding an amount that is . . . subject

---

[30]     U.C.C. § 3-311 cmt. 4.

[31]     *Hahn v. Geico Choice Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018) ("Whether the evidence presented a genuine issue of material fact is a question of law that we independently review." (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petrol., Inc.*, 322 P.3d 114, 122 (Alaska 2014)).)

[32]     AS 45.03.311(a)(2).

[33]     *See* AS 45.03.101 ("This chapter may be cited as the Uniform Commercial Code - Negotiable Instruments.").

to a 'bona fide dispute.' "[34] Williston's treatise on contracts suggests that the concept of a bona fide dispute includes both subjective and objective elements: the underlying dispute must be "honest and not obviously frivolous."[35] That rule is consistent with our treatment of the issue in *Air Van Lines, Inc. v. Buster*, which held that to resist an accord and satisfaction, a party would have to show either subjective bad faith or lack of legal merit in the underlying dispute.[36] Accordingly, we consider whether the evidence at summary judgment, considered in the light most favorable to Smallwood, supports an inference of Build Alaska's bad faith or establishes that the underlying payment dispute was frivolous.

The underlying dispute concerns how to calculate the amount of borrow material for which payment is owed. Build Alaska maintains that quantities are to be calculated according to survey results showing how much material was used in the project. Smallwood maintains that the amount is to be calculated by truck loads. Build Alaska relies on email communications prior to the execution of its contract with

---

[34]     2 JAMES J. WHITE, ROBERT S. SUMMERS, & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 17:44 (6th ed. 2010).

[35]     3 WILLISTON ON CONTRACTS § 7:34 (4th ed. May 2022 update).

[36]     673 P.2d 774, 778 (Alaska 1983) ("For AVL to avoid summary judgment on the issue of whether the accord was supported by adequate consideration, it would have to establish either bad faith or the absence of a bona fide dispute. . . . In the absence of some direct evidence of bad faith, AVL must establish that . . . no bona fide dispute existed as a matter of law."). Because our decision characterized subjective bad faith as distinct from a bona fide dispute, it could be read to suggest that subsequently enacted AS 45.03.311, which refers only to bona fide dispute, addresses only the legal merits of the underlying dispute — i.e., whether it is frivolous as a matter of law. But because our statute is modeled on the UCC, which incorporates the common law doctrine, which entailed both subjective and objective elements of good faith, the better reading of bona fide dispute in AS 45.03.311 includes both objective and subjective elements.

Smallwood in which Build Alaska's VanLiere stated that "[t]ruck counts will be confirmed with the survey quantities." Smallwood's Benson responded that they "may need to come to an agreement as to how to calculate final quantities for payment." The subsequent contract between the parties includes a price schedule in which the words "Quantities will be totaled by means of Truck Load Counts" are conspicuously typed, in bold and underlined font, in the row for Type A borrow material loaded by Smallwood. The price schedule does not mention survey results.

Build Alaska attempts to contradict the bolded contract terms stating that quantities will be totaled using truck loads by pointing to evidence that, prior to finalizing the contract, the parties were negotiating whether quantities should be totaled using a different method: survey results. In support of its position, Build Alaska points to the fact that its prime contract with DNR, which specifies that DNR's payment would be determined by a survey of the material in place, is incorporated into Build Alaska's subcontract with Smallwood. Yet there is no provision in the prime contract between Build Alaska and DNR directly addressing what Build Alaska owes Smallwood.

Build Alaska's legal position is not frivolous as a matter of law.[37] However, a reasonable person viewing the evidence in the light most favorable to Smallwood could

---

[37] We note, but do not decide, a threshold legal question of whether the prior communications cited by Build Alaska would be admissible as evidence to determine the contract's meaning. *See Froines v. Valdez Fisheries Dev. Ass'n*, 75 P.3d 83, 86-87 (Alaska 2003) ("When a written statement sets out the terms of an agreement between contracting parties, the parol evidence rule generally precludes the parties from using evidence of prior agreements to contradict the written terms. If the writing expresses part of the parties' agreement, the agreement is considered to be partially integrated; a writing that sets out the parties' complete agreement is deemed fully integrated. The parol evidence rule forbids contradiction of partially integrated terms but allows them to be 'explained or supplemented . . . by evidence of consistent additional terms.' In contrast, the rule does not allow the terms of a fully integrated contract to be varied by evidence of additional terms, even if those terms are consistent." (quoting AS 45.02.202)).

conclude that Build Alaska held this position in bad faith, given the course of events —
the parties were negotiating how to measure quantities for payment, and then the contract
expressly provides (in bolded language) for one method — and Build Alaska's initial
attempt to avoid payment by claiming the contract had "been voided since it past [sic]
120 days from last conversation." Because there is a genuine dispute of material fact
about the existence of a bona fide dispute, we reverse the grant of summary judgment on
this issue.

### 3. There is no dispute that Smallwood knew the payment was made in full satisfaction of the claim.

The superior court concluded that Build Alaska was entitled to summary
judgment because there was no dispute of material fact about whether Smallwood cashed
the check knowing that it was tendered in full satisfaction of its claim against Build
Alaska. The court rejected Smallwood's argument that the note "Final Payment" in the
memo line was ambiguous.

Smallwood reprises its argument here, arguing that the two previous checks
it received from Build Alaska included the phrase "PAID IN FULL" in their respective
memo lines, and those were only partial payments. It also cites its January 28 email to
VanLiere, suggesting it shows Benson's confusion about what "Final Payment" meant.

We agree with the superior court here. Alaska Statute 45.03.311(d)
provides that "[a] claim is discharged if the person against whom the claim is asserted
proves that within a reasonable time before collection of the instrument was initiated, the
claimant . . . knew that the instrument was tendered in full satisfaction of the claim."[38]
The communications between Smallwood and Build Alaska in which they dispute the
amount owed Smallwood for the job clearly show that Smallwood understood that this

---

[38] AS 45.03.311(d).

-16- **7601**

"Final Payment" was meant to be payment for the entire job. After receiving the check, Smallwood notified Build Alaska via email that it would not accept the check "because [it had] written in notes 'final payment' " and the amount was "half of what is owed." Smallwood stated that it would "be forwarding documentation throughout the day to help [Build Alaska] understand [its] liability to the amount stated on [Smallwood's] invoice." Two days later, Smallwood wrote back with a counteroffer to accept the lesser amount of $72,912.78 in settlement of the dispute. In light of the language "Final Payment" on the check and these communications, a reasonable person could not conclude that Smallwood was unaware that Build Alaska's payment of $37,472.48 was meant to be a full satisfaction of the claim. The superior court did not err in granting summary judgment to Build Alaska on this issue.[39]

### B. It Was Not Error To Grant Summary Judgment In Favor Of Build Alaska On Smallwood's Duress Defense.

The superior court rejected Smallwood's claim that it accepted Build Alaska's payment under economic duress. We affirm this ruling.

Economic duress exists where "(1) one party involuntarily accepted the terms of another, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party."[40] On the question of whether circumstances permitted "no other alternative," "[a]n available legal remedy,

---

[39] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014) ("A party is entitled to summary judgment only if there is no genuine issue of material fact and if the prevailing party is entitled to judgment as a matter of law." (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014))).

[40] *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 21 (Alaska 1978).

such as an action for breach of contract, may provide such an alternative."[41] But this court also recognizes that "[a]n available alternative . . . remedy may not be adequate where the delay involved in pursuing that remedy would cause immediate and irreparable loss to one's economic or business interest."[42] To establish the third element of coercion, "the assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by the plaintiff's necessities."[43] "In many cases, a threat to breach a contract or to withhold payment of an admitted debt has constituted a wrongful act"; however, "[i]mplicit in such cases is the additional requirement that the threat to breach the contract or withhold payment be done in bad faith."[44]

Smallwood analogizes its situation to *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*[45] In that case, Totem was facing bankruptcy and had no choice other than accepting the immediate cash payment offered by Alyeska.[46] We acknowledged that Totem would survive summary judgment if it provided any evidence showing that

> Alyeska deliberately withheld payment of an acknowledged debt, knowing that Totem had no choice but to accept an inadequate settlement of that debt; . . . that Totem was unable to meet its pressing debts other than by accepting the

---

[41] *Id.* at 22.

[42] *Id.*

[43] *Id.* at 21 (quoting *W.R. Grimshaw Co. v. Nevil C. Withrow Co.*, 248 F.2d 896, 904 (8th Cir. 1957)).

[44] *Id.* at 22.

[45] *Id.*

[46] *See id.* at 24.

immediate cash payment offered by Alyeska; and that through necessity, Totem thus involuntarily accepted an inadequate settlement offer from Alyeska and executed a release of all claims under the contract.[47]

What Smallwood fails to show, and what therefore distinguishes this case from *Totem*, is any awareness by Build Alaska that Smallwood's financial position gave it no choice but to accept the payment. Without this showing, Smallwood cannot establish that Build Alaska's tender of payment was coercive, the necessary third element of duress. Smallwood submitted an affidavit by Benson stating that while the dispute with Build Alaska was ongoing, his personal and professional finances got "very tight" and cashing Build Alaska's check was "the only way for [his] company to survive." But Smallwood did not submit any evidence showing that Build Alaska knew of Smallwood's dire financial straits or that Build Alaska deliberately withheld the payment in order to coerce Smallwood into accepting the payment due to its financial exigency. Smallwood supports its duress argument by pointing to evidence of Build Alaska's alleged about-face with regard to how the contract terms are construed and cryptic message about the contract being void after 120 days. This evidence could suggest, when viewed in the light most favorable to Smallwood, that Build Alaska was attempting to evade its payment obligations to Smallwood. But the superior court correctly stated that "Smallwood produces no admissible evidence that Build Alaska knew of its . . . financial situation such that Build Alaska could have known that continuing its dispute with Smallwood would force Smallwood's hand to cash the check."

If Build Alaska were hoping to win the dispute by attrition, it would need to know that Smallwood needed the payment to avoid financial insolvency. And Smallwood has not pointed to any evidence in the record suggesting this may be the case.

---

[47]     *Id.* at 23-24.

Therefore, the superior court did not err in ruling that Smallwood's claim of economic duress does not defeat summary judgment.[48]

### C. The Failure To Hold Oral Argument When Requested Was Error, But Smallwood Waived The Argument That This Error Caused Prejudice.

Lastly, Smallwood claims that the superior court erred by failing to schedule oral argument on Build Alaska's motion for summary judgment when it was requested by both parties. The superior court must allow oral argument on summary judgment if requested, and failing to do so here was error.[49] But "[a] party on appeal who alleges that oral argument was improperly denied must show . . . that the error caused substantial prejudice."[50] Smallwood has waived this argument by failing to address it in its opening brief. Although Smallwood's brief mentioned the issue in the statement of points on appeal, it did not contain any argument on this issue. The issue was addressed in detail only in the reply brief.

---

[48] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014) ("A party is entitled to summary judgment only if there is no genuine issue of material fact and if the prevailing party is entitled to judgment as a matter of law." (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014))).

[49] Alaska R. Civ. P. 77(e); *see Bennett v. Hedglin*, 995 P.2d 668, 674 (Alaska 2000).

[50] *Bennett*, 995 P.2d at 674 (quoting *Cleary Diving Serv., Inc. v. Thomas, Head & Greisen*, 688 P.2d 940, 942 (Alaska 1984)).

A "[f]ailure to argue a point of law constitutes abandonment" of that issue on appeal.[51] "[I]ssues not argued in opening appellate briefs are waived."[52] "[A]ttention to the issue in a reply brief does not resuscitate it."[53] Smallwood therefore waived this argument, and we decline to consider it now.

## V.   CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND for further proceedings.

---

[51]   *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598 (Alaska 2012) (alteration in original) (quoting *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 460 (Alaska 2010)).

[52]   *Id.* (quoting *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010)); *see also Heller v. State, Dep't of Revenue*, 314 P.3d 69, 83 n.77 (Alaska 2013) (emphasizing that arguments inadequately briefed on appeal are considered waived).

[53]   *Oels*, 279 P.3d at 598 (quoting *Braun v. Alaska v. Com. Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991)).